**Leroy Edward SMITH, Hubert Donald Smith and Rodger Winston Wagner, Appellants,**

v.

**UNITED STATES of America, Appellee.**

**No. 18474.**

United States Court of Appeals Fifth Circuit.

Dec. 6, 1960.

Howard Dailey, Dudley P. Andrews, Dallas, Tex., for appellants.

---

Minor Morgan, Asst. U. S. Atty., Dallas, Tex., W. B. West, III, U. S. Atty., Fort Worth, Tex., for appellee.

Before CAMERON and BROWN, Circuit Judges, and HANNAY, District Judge.

JOHN R. BROWN, Circuit Judge.

Only two questions of any real seriousness emerge in this appeal from the mandatory 25-year sentences imposed after a jury verdict finding the three appellants guilty of postal robbery effected by putting in jeopardy the life of the postal employees. 18 U.S.C.A. § 2114.[1] The Court-appointed counsel led by a veteran of the Criminal Bar "With great earnestness and a skill which presses out the very last drop of merit in the materials at hand," Gilmore v. United States, 5 Cir., 1959, 264 F.2d 44, 45, makes two principal contentions in the face of a formidable record of spectacular guilt.

The first is the assertion that the mandatory 25-year sentence amounts to a legislative determination which invades the independent exercise of judicial discretion implicit in our tripartite system. Especially is this so under Article III of the Constitution which vests the judicial power in the Supreme Court and in the inferior courts established by Congress. The second relates to the Court's charge on the meaning of the statutory phrase "or puts his life in jeopardy by the use of a dangerous weapon" which triggers the mandatory 25-year sentence.

We may severely compress the facts reflected by a record made up wholly of the prosecution's case since no evidence was offered by the defendants. The three defendants conceived the plan to rob the Pleasant Grove Postal Substation in Dallas. During the nighttime the three went to this post office and made a forcible entry after breaking the door locks. They were equipped with a well assorted set of burglary tools, chisels, sledge hammers, and the like. After rifling much mail, breaking dials and knobs off of file drawers and safes, it was decided they needed an acetylene cutting torch to breach the safe. They obtained this torch and continued their efforts to open the safes.

About this time (3:15 a. m.) a postal employee on a routine delivery of mail matter from the main Post Office entered the substation. He saw the three defendants but mistakenly assumed they were employees of a construction contractor engaged in some work on the building. He soon realized his error. As he brought the gondolas of mail in from his truck, one of the defendants pulled a gun on him and ordered him to come in. The revolver, a 38-caliber six-shooter, was no toy for the postal employee could see the shells in the chamber. One defendant, by the use of a long-bladed knife which he was brandishing, cut a pocket flap from the victim's trousers and took his billfold. The three then made him go to another part of the building where they sat him down, tied him to a seat and put a wastebasket over his head. The victim heard one man call out to "flatten him" to which another replied that he thought the victim would cooperate. After forcibly immobilizing this postal employee, the defendants proceeded to rifle mail sacks and packages.

While this was going on, another postal employee entered the post office and saw his fellow employee bound and covered by the wastebasket. One of the defendants had a gun pointed at the new-

---

1. "§ 2114. Mail, money or other property of United States

"Whoever assaults any person having lawful charge, control, or custody of any mail matter or of any money or other property of the United States, with intent to rob, steal, or purloin such mail matter, money, or other property of the United States, or robs any such person of mail matter, or of any money, or other property of the United States, shall, for the first offense, be imprisoned not more than ten years; and if in effecting or attempting to effect such robbery he wounds the person having custody of such mail, money, or other property of the United States, or puts his life in jeopardy by the use of a dangerous weapon, or for a subsequent offense, shall be imprisoned twenty-five years."

corner, another had a knife, and the third defendant was tearing a package. With the knife at his throat they took the surprised employee's billfold and then tied and covered him. During this time he heard one of the men say, "I have got your address. If you identify us, we will come and get you."

After the defendants departed, the two victims managed to free themselves. When later apprehended, each of the three defendants made statements to postal inspectors amounting substantially to admissions of these facts. Much loot was recovered, identified and traced as postal material. And the gun was recovered and identified.

After the verdict of guilty, the Court imposed the mandatory sentence of twenty-five years. The complaint now is not that the Court erred in having done that, for it is conceded that the statute requires it. Rather it is that the law is unconstitutional for fettering the exercise of judicial discretion which for young or first-time offenders might well have led to considerable leniency.

To the surprise of no one, counsel cite no cases in behalf of this contention. The implications of it are indeed awesome. One could hardly contend that the Legislative branch is confined to the mere defining of acts constituting crimes, or even their degrees as misdemeanors or felonies, leaving thereafter to the Judiciary the determination of the nature, kind and extent of the punishment. Subject only to fundamental constitutional protections akin to cruel and unusual punishment or concepts of due process— which are not remotely suggested by this record and should therefore await proper cases for delineation—it is entirely proper that Congress determine what constitutes the crime and its degrees

and what punishment shall be meted out by a court after the judicial ascertainment of guilt. In the wisdom of Congress this may at times be a minimum-maximum fine or imprisonment, or both. In others, as here, it may be mandatorily fixed and specific.[2]

On the second point, the appellants by a proposed charge now conceded to be technically correct, requested that the Court instruct the jury that the term "putting life in jeopardy" means that the life of the victim was actually in jeopardy and not merely that he thought so. This is, of course, the correct meaning as Judge Medina for the Second Circuit correctly demonstrates in the opinion tracing the developments under this ancient statute. United States v. Donovan, 2 Cir., 1957, 242 F.2d 61. We may assume that it is the preferred practice to spell this out substantially in the way the proffered instruction did. But the failure to do so is not necessarily error and in any case it must yet be measured against the probability of harmful consequence. F.R.Crim.P. 52(a).

That will frequently depend on the setting of the particular record. Here the Court repeated the language of the indictment in which it was charged that the defendants "put in jeopardy the life of the * * *" specified postal clerk. The Court then translated this into terms for definitive action by instructing the jury that "if you find and believe from the evidence beyond a reasonable doubt * * * that in effecting such robbery the defendants then and there did put in jeopardy the life of the said [postal employee] * * * then you will return a verdict of guilty."

In this record the weapons used were a gun and a long-bladed knife. Each was brandished with threatening state-

---

2. It is now somewhat obliquely suggested —but without any record support for it —that this constitutionally valid mandatory sentence may have misled the District Judge into thinking that probation could not be extended. But no reversal or vacation of the sentence is required to effect probation. Under F.R.Crim.P. 35, 18 U.S.C.A. the sentencing court, on ap-

plication within 60 days after affirmance, has opportunity to look at the sentence again. Probation is, of course, available despite the mandatory 25-year term. United States v. Donovan, 2 Cir., 1957, 242 F.2d 61, 64. Obviously we express no opinion on the propriety of its use as to any one or all of these defendants.

792

ments and used to prevent or discourage any resistance by the postal employees. In this atmosphere we do not believe that a jury could have been confused as to the meaning of "putting in jeopardy the life" of the victims. Here at least the jury would reasonably consider that the usual meaning was likewise the law's meaning—life was in peril, not merely thought to be. Nothing said or unsaid in the balance of the charge could possibly have been interpreted to mean or even suggest that the jury could evaluate it in terms of the subjective fears of the two victims. The test laid down was the objective one that their lives had to be in fact in danger.

The Court left that for the jury to determine as the critical fact under proper instructions. There it ends.

Affirmed.