**Willie F. BALLARD, Petitioner-Appellant,**

v.

**Olin G. BLACKWELL, Respondent-Appellee.**

**No. 30990**

**Summary Calendar.***

United States Court of Appeals,
Fifth Circuit.

Oct. 19, 1971.

John C. Pennington, Atlanta, Ga. (Court appointed), for petitioner-appellant.

John W. Stokes, Jr., U. S. Atty., Richard H. Still, Jr., Asst. U. S. Atty., Atlanta, Ga., for respondent-appellee.

---

* [1] Rule 18, 5 Cir.; See Isbell Enterprises, Inc. v. Citizens Casualty Co. of New York et al., 5 Cir., 1970, 431 F.2d 409.

Before JOHN R. BROWN, Chief Judge, INGRAHAM and RONEY, Circuit Judges.

JOHN R. BROWN, Chief Judge:

The single issue on this appeal is whether Willie F. Ballard, presently serving a sentence in Federal custody for violation of the Dyer Act, is entitled by virtue of 18 U.S.C.A. § 3568[1] to mandatory credit for time spent in State pretrial confinement. Unfortunately, while the law is clear, the facts are not, and we must therefore remand to the District Court for additional findings on the critical question of whether a Federal detainer was the cause of appellant's confinement.

In his petition Ballard sought credit on his Federal sentence for time spent in jails in Tallahassee, Florida and Augusta, Georgia during the period February 8, 1966[2] to October 13, 1966. The initial Florida custody was in connection with a Federal charge of unlawful flight to avoid prosecution on a charge of auto larceny in Georgia. On March 16 Ballard was extradited to Augusta to await trial on that charge, which ultimately resulted in conviction and a six-year sentence on October 13. In September 1967, while still serving time on the State sentence, he was transferred back to Florida for trial on the Dyer Act charge and following conviction was sentenced to four years. He began serving the Federal sentence when he completed service of the State sentence on April 30, 1969.

■■ In interpreting § 3568 we are definitely committed to the position that time spent in State custody *must* be credited toward time served on a Federal sentence if the continued State confinement was exclusively the product of such action by Federal law-enforcement officials as to justify treating the State jail as the practical equivalent of a Federal one. Davis v. Attorney General, 5 Cir., 1970, 425 F.2d 238; United States v. Morgan, 5 Cir., 1970, 425 F.2d 1388. If the Federal detainer alone prevented Ballard's release from State confinement, credit must be given. United States v. Werner, 4 Cir., 1969 [No. 12146, February 10, 1969] (unreported mem. decision); Brown v. United States, N.D.Ga., 1970, 311 F.Supp. 325. Or, to state it affirmatively, if absent the Federal detainer and under available state procedures Ballard could have been released from the contemporary State confinement, credit must be given.

The District Court, in its order denying relief following a full evidentiary hearing,[3] stated that "petitioner, at the [Federal] hearing, testified that bail was set on his State charges at $1000.00, and that, if he had paid the bail bondsman the required premium, he would have been released from State custody."[4] After carefully reading the Federal hearing transcript we find no evidence

1. "The Attorney General shall give [a Federal prisoner] credit toward service of his sentence for any days spent in custody in connection with the offenses or acts for which sentence was imposed."

2. The Government's response asserts that the date of arrest was February 21. However, its supporting memorandum states that petitioner was arrested in Tallahassee by the U. S. Marshal on February 8 (R. 15), and we assume that to be the correct date.

3. The Court by pretrial order prescribed that the factual issues to be resolved were (i) when and where the Federal detainer had been lodged against the accused and (ii) for what reasons the State authorities refused to set bond (R. 20). Petitioner was effectively represented at the hearing by court-appointed counsel.

4. Other testimony also establishes that if Ballard had succeeded in posting bond he would have been transferred to the custody of these authorities, State or Federal, who had earlier filed detainers against him, with priority given on a "first-filed" basis (R. 62–63). While there is some testimony regarding other *State* detainers in force at the time (R. 61), we assume the correctness of the District Court's finding (R. 25) that Ballard would have been released to Federal authorities had he managed to post bond on the State charge.

supporting this statement and a great deal that contradicts it. Appellant testified that he possessed the funds needed to secure a bond on the State charge (R. 48) but that he was never permitted to post it because the bondsmen he called refused their services after discovering the existence of the outstanding Federal detainer. Moreover, the State deputy sheriff and assistant jailer testified that, although he could not remember specifically what had happened in Ballard's case, he was familiar with numerous situations in which prisoners under Federal detainer had been denied bonding service on a State charge.[5] This testimony supports, rather than refutes, appellant's claim that the detainer alone was responsible for nearly eight months of confinement in State custody. And, to cap it all off, without holding that the District Judge was bound to credit Ballard, we nevertheless find no evidence that he could have obtained an acceptable state bond in the face of the detainer.

■ Of course, if appellant had *voluntarily* refused to procure a bond offered at an additional premium because of the Federal detainer, his custody then would have been "caused," in the widest sense of that term, by his own intran-

sigence, and he would be entitled to no relief.[6] But there is no evidence establishing that such a bond was offered, and much suggests that the bonding companies, as a matter of general practice, simply refused to underwrite a prisoner's release on State charges if a Federal detainer was also in effect. Even if such a bond had been available at additional cost, but the prisoner (able to meet the cost of a non-detainer bond) had been unable to meet the extra expense induced by the detainer, it might turn out from the circumstances of the case that his inability to post bond at all would be sufficiently attributable to the sort of Federal action that calls into play § 3568.[7]

■ Following remand we think the significant questions will be (i) whether Ballard was financially able and willing to post bond on the State charge, (ii) whether his failure to do so was the result of his inability to secure a bail bond, (iii) whether this inability, if any, was the result of the bondsman's refusal to write the bond, and (iv) whether this refusal, if any, resulted solely from the existence of the Federal detainer. If all of these questions are answered affirmatively, credit under § 3568 is mandatory.

Vacated and remanded.

---

Such a finding reinforces Ballard's contention because release to Federal custody obviously would have required mandatory crediting of the time spent in pretrial confinement, even if the prisoner had been unable to post the additional bond on the Federal charge.

5. "The bondsman had come down to post bond for a certain party there in jail, and I took it upon myself to let the bondsman know what he was letting himself in for, to let him know we had a detainer placed against this subject, and so he turned around and said, 'Well, I'm not going to sign this bond.' He said, 'You should have told me he had this other detainer'." (R. 69). The witness also testified that "these detainers here prevented a bondsman from posting bond." (R. 67).

6. Boyd v. United States, 5 Cir., 1971, 448 F.2d 477; Jackson v. Attorney General, 5 Cir., 1971, 447 F.2d 747; United States

v. McCrocklin, 6 Cir., 1969, 410 F.2d 1137. The same result follows even if the prisoner's "refusal" or "failure" to post bond is the product of his inability to pay the bondsman. But a far different consequence follows if the individual in custody has the money to pay for a bond on a State charge, attempts repeatedly to secure one, but is repeatedly refused solely because of the detainer.

7. In its supporting memorandum in the District Court, the Government asserted that the denial of bail on the State charge was solely the result of petitioner's previous flight to avoid prosecution (R. 16). We think the evidence and the District Court's findings effectively refute the contention. Bail was set, and Ballard failed to make it. The only unresolved issue is whether that failure was solely the consequence of the Federal detainer.