**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Curtis Patrick HARRIS and Beverly
Ann Holmes, Defendants–Appellants.**

**No. 88–3223.**

United States Court of Appeals,
Eleventh Circuit.

July 11, 1989.

---

Armando Garcia, Asst. Federal Public Defender, Tallahassee, Fla., for Harris.

Daniel A. McKeever, Live Oak, Fla., for Holmes.

Lyndia P. Barrett, Stephen S. Dobson, III, Asst. U.S. Attys., for U.S.

Before JOHNSON and EDMONDSON, Circuit Judges, and TUTTLE, Senior Circuit Judge.

TUTTLE, Senior Circuit Judge:

Beverly Ann Holmes and Curtis Patrick Harris appeal from their judgments of sentence entered following conviction for conspiracy to possess with intent to distribute more than 50 grams of cocaine and possession with intent to distribute more than 5 grams of cocaine, in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2. Appellant Holmes contends that the evidence is insufficient to sustain her conviction. Both appellants challenge the constitutionality of the Sentencing Guidelines promulgated under the Sentencing Reform Act of 1984 ("the Act"), Pub.L. No. 98–473, 98 Stat. 2017 (codified as amended at 18 U.S.C. § 3551 *et seq.* and 28 U.S.C. § 991 *et seq.*), under which their sentences were imposed. Appellants also contest the district court's calculation of credit for pre-trial detention.

## I. STATEMENT OF THE CASE AND OF THE FACTS

In the fall of 1987, appellants were living together with another roommate in the roommate's apartment in a housing complex in Gainesville, Florida. On November 27, 1987, appellants were asleep in the apartment, when a Drug Enforcement Administration agent, federal narcotics officers and several Gainesville police officers entered and arrested appellants pursuant to a state warrant. Cocaine was found under the mattress on which appellants had been sleeping and inside and on top of a bedroom dresser; a gun and cash were also found. The arrest was by state officers, acting on a warrant issued by a state court judge. The state officers, however, had been alerted by a federal narcotics agent

who attempted but failed to find a federal magistrate to issue the warrant.

Holmes and Harris were each charged in a two-count indictment and tried by a jury. At the trial, the government relied upon the testimony of appellants' roommate, a co-conspirator with appellants, and a third witness who resided at the housing complex. The jury returned verdicts of guilty. The court, pursuant to the new Sentencing Guidelines, sentenced Holmes to two concurrent prison terms of 131 months, with five years of supervised release, and Harris to two concurrent 210–month terms, with five years of supervised release.

## II. DISCUSSION

### A. Sufficiency of the Evidence

■ Holmes contends that her mere presence in the apartment and her association with Harris are insufficient to support the conviction. The government proffered evidence not simply of Holmes' mere presence, but of her "presence under a particular set of circumstances," *United States v. Cruz–Valdez*, 773 F.2d 1541, 1545 (11th Cir.1985) (en banc), *cert. denied*, 475 U.S. 1049, 106 S.Ct. 1272, 89 L.Ed.2d 580 (1986). The government then bolstered the circumstantial evidence with the testimony of three witnesses familiar with appellants' activities. We conclude that the evidence and the inferences that may be drawn from it, viewed in the light most favorable to the government, permitted a reasonable trier of fact to find Holmes guilty beyond a reasonable doubt on both counts. *United States v. Bell*, 678 F.2d 547, 549 (5th Cir. Unit B 1982) (en banc), *aff'd on other grounds*, 462 U.S. 356, 103 S.Ct. 2398, 76 L.Ed.2d 638 (1983).

### B. Constitutionality of the Sentencing Guidelines

■ Appellants both contend that the Sentencing Reform Act of 1984 and the Guidelines promulgated thereunder are unconstitutional. Their arguments that the

Act permits an improper delegation of legislative authority and violates separation of powers principles were rejected in *Mistretta v. United States*, —— U.S. ——, 109 S.Ct. 647, 102 L.Ed.2d 714 (1989). Appellants' third contention, however, that the Act denied them of their due process right to an individualized sentencing procedure, was not raised or specifically discussed in *Mistretta*.

Appellants argue that the Guidelines unconstitutionally restrict a sentencing judge's discretion by requiring the mechanical application of a sentencing procedure and preventing the judge from weighing various factors relating to factual and personal background: age, education, vocational skills, physical, mental and emotional condition, previous employment record, and family or community ties. Holmes contends, specifically, that the Guidelines prohibited the district court from considering the humanitarian circumstances of her case; she had no prior record and her daughter and sister were killed in an automobile accident one month before Holmes began living with Harris.

Appellants rely upon the reasoning of the district court for the Western District of Pennsylvania, which found that due process requires a defendant to have the opportunity to challenge the weight accorded various facts which enter into the sentencing formula. *U.S. v. Frank*, 682 F.Supp. 815 (W.D.Pa.1988).[1] The Court of Appeals for the Third Circuit, however, vacated the judgment of sentence entered by the district court and remanded the case for resentencing, because it found that the Act and Guidelines, while "substantially circumscrib[ing]" the discretion which the district judges formerly exercised over sentencing," did not violate a defendant's due process rights. *U.S. v. Frank*, 864 F.2d 992, 1008 (3d Cir.1988).

Likewise, the Court of Appeals for the Second Circuit rejected the argument that a defendant has a due process right to individualized sentencing in a non-capital

---

**1.** Although the district court's opinion in *Frank* applies a test for determining what procedural process is due, appellants' claims in the instant case seem to be directed at the substance of the alleged deprivation.

case. *United States v. Vizcaino*, 870 F.2d 52 (2d Cir.1989). More recently, the Court of Appeals for the Fifth Circuit also upheld the Guidelines against a due process challenge. *United States v. White*, 869 F.2d 822 (5th Cir.1989) (per curiam).

We, too, recognize that the Guidelines restrict the discretion of the district court, to some extent, in sentencing. Congress has the authority to impose such a restriction, however. As the Supreme Court stated in *Mistretta:*

> Historically, federal sentencing—the function of determining the scope and extent of punishment—never has been thought to be assigned by the Constitution to the exclusive jurisdiction of any one of the three Branches of government. Congress, of course, has the power to fix the sentence for a federal crime, *United States v. Wiltberger*, 18 U.S. (5 Wheat.) 76 [5 L.Ed. 37] (1820), and the scope of judicial discretion with respect to a sentence is subject to congressional control. *Ex Parte United States*, 242 U.S. 27 [37 S.Ct. 72, 61 L.Ed. 129] (1916). Congress early abandoned fixed-sentence rigidity, however, and put in place a system of ranges within which the sentencer could choose the precise punishment. See *United States v. Grayson*, 438 U.S. 41, 45–46 [98 S.Ct. 2610, 2613–14, 57 L.Ed.2d 582] (1978). Congress delegated almost unfettered discretion to the sentencing judge to determine what the sentence should be within the customarily wide range so selected. This broad discretion was further enhanced by the power later granted the judge to suspend the sentence and by the resulting growth of an elaborate probation system.

*Mistretta*, 109 S.Ct. at 650.

With the discretion Congress delegated to the judiciary ever broadening, wide disparities in sentences for similar crimes abounded, leading to the significant legisla-

tive reform enacted in 1984. Congress' aim in creating the Sentencing Commission was to reduce the sentencing disparities and "establish sentencing policies and practices for the Federal criminal justice system that ... provide certainty and fairness in meeting the purposes of sentencing." 28 U.S.C. § 991(b)(1)(B). Under the new legislation, Section 3553 of Title 18 requires the court to impose a sentence within the relatively narrow range established by the Sentencing Commission. The court may find, however, that certain aggravating or mitigating circumstances, not adequately considered by the Sentencing Commission in formulating the Guidelines, dictate a departure from the prescribed range. 18 U.S.C. § 3553(b). In that case, the court must state "the specific reason for the imposition of a sentence different from that described." 18 U.S.C. § 3553(c).

The Guidelines embody the most recent congressional pronouncement on sentencing. Congress thereby exercised its power to specify the sentence for a federal crime and to control judicial discretion in imposing the sentence. The Guidelines essentially set the minimum and maximum penalty the sentencer may impose for given categories of offenses and defendants.

With this characterization, we are bound by this Court's decision in *United States v. Holmes*, 838 F.2d 1175 (11th Cir.), *cert. denied*, —— U.S. ——, 108 S.Ct. 2829, 100 L.Ed.2d 930 (1988), which held that a mandatory minimum sentencing provision does not deprive a defendant of an individualized sentencing procedure in violation of due process rights. If a mandatory minimum sentence withstands due process scrutiny, so must the sentencing procedure of the Guidelines. The latter even permits the sentencing judge to depart from the prescribed range, if warranted by certain aggravating or mitigating circumstances. 18 U.S.C. § 3553(b).[2] *See also Smith v. U.S.,*

---

**2.** Moreover, in establishing categories of defendants, the Commission was required to consider eleven factors, to the extent that they had any relevance to "the nature, extent, place of service, or other incidents of an appropriate sentence." 28 U.S.C. § 994(d). The list of factors—age, education, vocational skills, mental, emotional

and physical condition, previous employment record, family and community ties and responsibilities, role in the offense, criminal history, and degree of dependence upon criminal activity for a livelihood—includes the elements appellants urge are necessary for the court to consider in sentencing. Although the judge may no

284 F.2d 789, 791 (5th Cir.1960) ("[I]t is entirely proper that Congress determine what constitutes the crime and its degrees and what punishment shall be meted out by a court after the judicial ascertainment of guilt. In the wisdom of Congress this may at times be a minimum—maximum fine or imprisonment, or both. In others, as here, it may be mandatorily fixed and specific.").

The Supreme Court has recognized the constitutional right of a defendant to an individualized sentence for a capital crime. *Lockett v. Ohio*, 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978). In a noncapital case, however, the need for treating each defendant "with that degree of respect due the uniqueness of the individual" is not nearly as great. *Id.* at 605, 98 S.Ct. at 2965. The *Lockett* Court recognized, in dicta, "that the concept of individualized sentencing in criminal cases generally, although not constitutionally required, has long been accepted in this country," *id.* at 602, 98 S.Ct. at 2963, but that, "in noncapital cases, the established practice of individualized sentences rests not on constitutional commands, but on public policy enacted in statutes," *id.* at 604–05, 98 S.Ct. at 2964–65.

In the absence of a controlling Supreme Court decision on the issue, the Court's dicta strongly suggest that a restriction on individualized sentencing in a noncapital case would simply amount to a deprivation based on public policy, with no constitutional significance. Since Congress has the right to state what the public policy is, Congress may modify it to meet the demands of a changing society. It did so in the area of sentencing through the Sentencing Reform Act. The Act reflects the more modern view that imprisonment is not an effective means of promoting rehabilitation. 28 U.S.C. § 994(k). Retribution and deterrence, however, continue to be appropriate societal goals of punishment, with

which the Guidelines sentencing procedure is consistent.

Through the Sentencing Reform Act, Congress merely decided to exercise its power to fix sentences and tighten the rein on the broad judicial discretion it had previously delegated, which resulted in unacceptably wide sentencing disparities. The more uniform sentencing sought by the Guidelines should provide even greater fairness to defendants.

For the foregoing reasons, the Act and Guidelines do not deprive appellants of a due process right.

### C. Credit for Pre-trial Detention

█ Appellants were taken into custody on November 27, 1987. The sentencing court ordered that they receive credit for pre-trial detention from December 7, 1987, the date the federal detainer was issued. Appellants claim they were erroneously denied credit for the ten days before they were officially in federal custody.

A defendant is entitled to credit toward the service of a term of imprisonment for time spent in official detention prior to the date the sentence commences—(1) as a result of the offense for which the sentence was imposed; or (2) as a result of any other charge for which the defendant was arrested after the commission of the offense for which the sentence was imposed —that has not been credited against another sentence. 18 U.S.C. § 3585(b). Appellants spent time in state custody as a result of the offense for which they were tried, convicted and sentenced.

█ Where a convicted federal prisoner claims credit for time served in a state jail or prison, the burden is on the prisoner to establish that the state confinement "was exclusively the product of such action by Federal law-enforcement officials [so] as to justify treating the State jail as the practical equivalent of a Federal one. *Davis v.*

---

longer weigh the factors, their relevance has already been considered and set forth in the Guidelines, Chapter 5, Part H. The court may still weigh facts such as the role of the defendant in the crime, the defendant's criminal history, and whether the defendant abused any

trust given to him in committing the crime. Therefore, although the sentencing court no longer has completely unfettered discretion, much remains, so that sentencing is not merely a mechanical process.

*Attorney General,* 5 Cir., 1970, 425 F.2d 238." *Ballard v. Blackwell,* 449 F.2d 868, 869 (5th Cir.1971).

Here, the undisputed facts are that the United States agent of the DEA originated the action taken by the state and city officers. He sought a U.S. magistrate to obtain a warrant for the search of defendants' home. Not finding one readily available, he asked the local officers to seek a warrant from the available state judge. This was done, and the defendants were arrested after contraband was found in their room.

Although it is plain that the state took an important part in the acts that resulted in their arrest, it cannot be argued that the incarceration was not "exclusively the *product* of such action by Federal law enforcement officials." *Id.* at 869 (emphasis added).

Appellants are entitled to credit for pretrial detention as of November 27, 1987.

The judgments of conviction are AFFIRMED. The case is REMANDED with directions to the trial court to correct the sentences as indicated.

EDMONDSON, Circuit Judge, concurring in part and dissenting in part:

I join in the court's opinion except Part C.

I agree that *Ballard v. Blackwell,* 449 F.2d 868, 869 (5th Cir.1971), sets the standard: whether the state confinement was *"exclusively* the product of such action by Federal law-enforcement officials [so] as to justify treating the State jail as the practical equivalent of a Federal one." (citation omitted) (emphasis added). "Exclusively" is an important part of this formulation. *See Savage v. Henderson,* 475 F.2d 78, 79 (5th Cir.1973) (prisoner entitled to credit if unable to make bond "solely" due to federal detainer warrant); *O'Connor v. Attorney General,* 470 F.2d 732, 734 (5th Cir. 1972) (defendant-appellant has burden "to show that the federal detainer alone caused his continued state confinement").

"A judicial opinion, as a precedent, is to be read and applied in the light of the facts of the case in which the opinion was written." *Roberson v. United States,* 249 F.2d 737, 743 (5th Cir.1957); *accord White v. Aronson,* 302 U.S. 16, 21, 58 S.Ct. 95, 97, 82 L.Ed. 20 (1937) ("Of course, the general language of [ ] opinions must be read in connection with the facts."). *Ballard's* facts therefore dictate the meaning of the phrase "exclusively the product" of action by federal officials. Ballard said he would have made bail on his state charges and, thus, would have been free but for the existence of a federal detainer. So, Ballard alleged facts showing that his imprisonment was due solely to federal action.

Here, defendants were arrested by *state* officers, acting pursuant to a *state* arrest warrant issued by a *state* judicial officer. Defendants could have been prosecuted by the state, and perhaps they still could be (although I do not think this is determinative). The days of credit defendants seek are days that predate the federal detainer. Until that detainer was lodged, defendants were purely state prisoners and could have been set free by the *state* at any time had it wished to do so. Therefore, until the federal detainer was lodged, defendants' imprisonment was not due solely—if it was due in any legal sense—to federal action.

The circumstances leading up to defendants' arrest do not control whether defendants, once they are incarcerated, are state or federal prisoners. *See United States v. Walker,* 710 F.2d 1062, 1070–71 (5th Cir. 1983) (following *Ballard* and rejecting argument that state custody was functional equivalent of federal custody where federal agents participated with state agents in investigation and arrest); *United States v. Shillingford,* 586 F.2d 372, 375 (5th Cir. 1978). In addition, even if a DEA agent did urge defendants' arrest in this case, state officials still had to agree and to act: the DEA agent's wish was not the exclusive cause of the arrest. *Ballard* lends no support to the conclusion reached by the court's opinion; nor am I aware of other precedent that extends state jail-time credit to federal cases as today's court seems to do.

Many people get no credit for time spent in pretrial custody; for example, no credit is given for pretrial confinement if the charges are dropped. Whether these defendants get ten days of jail-time credit is not very important to anyone but them, but situations like the one in this case will happen again. The expansion of *Ballard* to allow colorable arguments for jail-time credit whenever a federal agent had something to do with a state arrest—with subtle factual shadings affecting the argument's outcome—injects considerable uncertainty into law that was settled.

I would affirm the district court's judgment.