**UNITED STATES of America, Appellee,**

v.

**Jorge VIZCAINO, Appellant.**

**No. 579, Docket 88–1302.**

United States Court of Appeals,
Second Circuit.

Submitted Feb. 21, 1989.
Decided March 6, 1989.

Rene A. Sotorrio, Coral Gables, Fla., for appellant.

David C. James, Asst. U.S. Atty. (Andrew J. Maloney, U.S. Atty. E.D.N.Y., Jacques Semmelman, Asst. U.S. Atty., of counsel), for appellee.

Abraham L. Clott, New York City, for amicus The Legal Aid Soc., Federal Defender Services Unit.

Before OAKES, Chief Judge, NEWMAN, Circuit Judge, and LEVAL, District Judge.*

OAKES, Chief Judge:

Jorge Vizcaino appeals a sentence imposed by the United States District Court for the Eastern District of New York, Charles P. Sifton, Judge, applying the Sentencing Guidelines promulgated under the Sentencing Reform Act of 1984 ("the Act"), Pub.L. No. 98–473, 98 Stat. 2017 (codified

* Of the United States District Court for the South-    ern District of New York, sitting by designation.

as amended in scattered sections of titles 18 & 28 U.S.C.A.). Vizcaino, mounting what is essentially a facial challenge to the underlying statute, argues that sentencing under the Guidelines unconstitutionally denied him the due process guaranteed by the Fifth Amendment.[1] Vizcaino, who does not appeal his conviction, pleaded guilty to possession of cocaine with intent to distribute it in violation of 21 U.S.C. § 841(a)(1) (1982). Judge Sifton, who sentenced Vizcaino to fifty-one months in jail, a three-year period of supervised release, and a special assessment of $50, rejected Vizcaino's constitutional arguments in open court.

Vizcaino was sentenced in June of 1988, and his brief was filed October 25, 1988. This appeal was held pending the Supreme Court's consideration of the challenge to the Act on separation of powers grounds. Vizcaino originally argued, in addition to the due process challenges we consider today, that the Act establishing the Guidelines violated separation of powers principles and Article III and that the Sentencing Reform Act unconstitutionally delegated an inherently legislative function to the judicial branch. The Supreme Court rejected those arguments in *Mistretta v. United States*, — U.S. —, 109 S.Ct. 647, 102 L.Ed.2d 714 (1989). After *Mistretta* was announced, Vizcaino's counsel waived oral argument, saying that his remaining arguments were "mooted." Amicus, the Federal Defender Services Unit of the Legal Aid Society, however, then sought and received permission to submit a brief arguing the due process challenges. Vizcaino's challenges to the Guidelines do not depend on the facts of his case or the way the district court applied the Guidelines to his sentence.

Reading the briefs of appellant and amicus together, we find that there are two types of due process challenges before us, although the first is restated in several different ways. Basically, the first argument is that the statute (and Guidelines) unconstitutionally prevent the judge from making discretionary assessment of the individual defendant at sentencing; the second argument is that the Guidelines, which were originally developed and are continuously revised by commissioners who are subject to presidential appointment and removal, are the product of a scheme that vests excessive sentencing authority in the prosecutorial branch of the government. We affirm the district court's rejection of these contentions.

## I. *Individualized sentencing*

A. *The restriction of discretion and the denial of individualized sentencing.* Appellant argues, and some district courts have held, that there is a substantive due process right to discretionary individualized sentencing. *See, e.g., United States v. Alafriz*, 690 F.Supp. 1303, 1309–10 (S.D.N.Y.1988). We find, however, that no such due process right exists.

Because appellant argues that the Act unconstitutionally denies him individualized sentencing, it is appropriate to determine at the outset whether the Guidelines, in fact, restrict the district court's discretion in sentencing. While the statute instructs a sentencing court to consider a broad range of factors, including the Guidelines, 18 U.S. C. § 3553(a) (Supp. IV 1986), the Guidelines tell how the district court should treat many of the potential factors that could be taken into consideration. One of the purposes of the Sentencing Commission is to achieve a certain amount of uniformity, to

> provide certainty and fairness in meeting the purposes of sentencing, avoiding unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar criminal conduct while maintaining sufficient flexibility to permit individualized sentences when warranted by mitigating or

---

1. Defendants bringing due process challenges to the Guidelines have been successful in, *e.g., United States v. Ortega Lopez*, 684 F.Supp. 1506 (C.D. Cal.1988) (en banc). *Contra, e.g., United States v. Alves*, 688 F.Supp. 70, 79–80 (D.Mass. 1988); *United States v. Weidner*, 692 F.Supp.

968, 971–74 (N.D. Ind.1988). The only court of appeals yet to pass on the question, the Third, upheld the Act against a substantive due process challenge. *United States v. Frank*, 864 F.2d 992 (3d Cir.1988).

aggravating factors not taken into account in the establishment of general sentencing practices.

28 U.S.C. § 991(b)(1)(B) (Supp. IV 1986). The statutory provision for departure from the Guidelines, which was broadened in 1987, provides:

*Application of guidelines in imposing a sentence.*—The court shall impose a sentence of the kind, and within the range, referred to ... unless the court finds that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described. In determining whether a circumstance was adequately taken into consideration, the court shall consider only the sentencing guidelines, policy statements, and official commentary of the Sentencing Commission.

18 U.S.C.A. § 3553(b) (West Supp.1988). The 1987 amendment inserted the words "of a kind, or to a degree," *see* Pub.L. No. 100–182, § 3(1), 101 Stat. 1266, (1987), thereby potentially authorizing a sentencing court to vary the weight accorded a factor named in the Guidelines. *See generally* United States Sentencing Commission Guidelines Manual ("Manual") § 5K2.0 (policy statement on grounds for departure); *id.* §§ 5K2.1 *et seq.* (concerning particular possible bases for departure such as death and physical injury to victim); 18 U.S.C. § 3553(c)(2) (Supp. IV 1986) (court must articulate "specific reason" for departure from Guidelines). Our court has already, under the "reasonableness" standard of review, *see* 18 U.S.C.A. § 3742 (West Supp.1988), approved departures from the Guidelines. *See United States v. Guerrero,* 863 F.2d 245, 250–51 (2d Cir. 1988); *United States v. Correa–Vargas,* 860 F.2d 35, 40 (2d Cir.1988).

Furthermore, the introduction to the Guidelines Manual authorizes consideration of departure "[w]hen a court finds an atypical case, one to which a particular guideline linguistically applies but where conduct significantly differs from the norm." Manual at 1.6.

But it is clear there are some limits on the opportunity for departure. And it appears that the range of sentencing court discretion may be reduced even more in the future. As the introduction to the Guidelines Manual notes, "[b]y monitoring when courts depart from the guidelines and by analyzing their stated reasons for doing so, the Commission, over time, will be able to create more accurate guidelines that specify precisely where departures should and should not be permitted." Manual at 1.7; *see also Correa–Vargas,* 860 F.2d at 40 (noting that the Commission has the power to prevent in the future the particular departure approved in that case). Reducing unwarranted disparities was a principal goal of the legislation. *See* 28 U.S.C. § 994(b)(2) (Supp. IV 1986) (in most cases minimum and maximum prison guideline ranges should not vary more than 25% or six months, whichever is greater); *Mistretta,* —— U.S. at ——, 109 S.Ct. at 650. We conclude that the new sentencing system undoubtedly will restrict discretionary individualized sentencing.

We must determine, therefore, whether there is a due process right to such discretion. As Justice Blackmun recounted in his opinion for the Court in *Mistretta,* Congress employed an indeterminate-sentencing system for almost a century prior to the establishment of the Sentencing Guidelines system. *Mistretta,* at ——, 109 S.Ct. at 650–51. "Congress delegated almost unfettered discretion" to trial courts to choose sentences from "customarily wide range[s]," although Congress later determined that the system produced uncertainty and undesirable variations among sentences. *Id.* at ——, 109 S.Ct. at 651 (citing S.Rep. No. 98–225 (1983)); *see also United States v. Grayson,* 438 U.S. 41, 45–47, 98 S.Ct. 2610, 2613–2614, 57 L.Ed.2d 582 (1978) (describing history of sentencing practices). When indeterminate sentencing was the prevailing model for federal sentencing, from time to time it was held to be an abuse of discretion for a trial court to sentence mechanically, rather than individually. *See, e.g., United States v. Barker,* 771 F.2d 1362 (9th Cir.1985); *United States*

*v. Wardlaw,* 576 F.2d 932, 938 (1st Cir. 1978); *United States v. Schwartz,* 500 F.2d 1350 (2d Cir.1974); *United States v. Baker,* 487 F.2d 360 (2d Cir.1973); *cf. Williams v. New York,* 337 U.S. 241, 69 S.Ct. 1079, 93 L.Ed. 1337 (1949) (holding that because contemporary concepts required individualized sentencing, a state trial court's consideration of evidence for sentencing purposes without adherence to the rules of evidence did not violate due process).

Appellant does not refer us to any Supreme Court or circuit court decision identifying a constitutional right to individualized sentencing in noncapital cases. Several Supreme Court decisions have rejected the argument in dicta. Most notably, Justice Blackmun in *Mistretta* commented that "the scope of judicial discretion with respect to a sentence is subject to congressional control," citing a decision in which the Court ordered a district court to impose a mandatory minimum sentence. *Mistretta,* — U.S. at —, 109 S.Ct. at 651 (citing *Ex parte United States,* 242 U.S. 27, 37 S.Ct. 72, 61 L.Ed. 129 (1916)). In *Lockett v. Ohio,* 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978), Chief Justice Burger for a four-justice plurality said in dicta that there is no constitutional right to individualized sentencing in noncapital cases: "We recognize that, in noncapital cases, the established practice of individualized sentences rests not on constitutional commands, but on public policy enacted into statutes." *Id.* at 604–05, 98 S.Ct. at 2964–65; *see also Sumner v. Shuman,* 483 U.S. 66, 75, 107 S.Ct. 2716, 2722, 97 L.Ed.2d 56 (1987) (dicta to same effect); *Woodson v. North Carolina,* 428 U.S. 280, 304–05, 96 S.Ct. 2978, 2991–92, 49 L.Ed.2d 944 (1976) (three-justice plurality writing in dicta to same effect).

Further supporting the Government's position is *United States v. Frank,* 864 F.2d 992 (3d Cir.1988), in which the Third Circuit held that there is no substantive due process right to individualized sentencing be-

cause recognition of such a liberty interest, which would make it a "right inherent in the human condition," would be inconsistent with the generally accepted sentencing functions of retribution and general deterrence. *Id.* at 1008–09; *see also Gubiensio-Ortiz v. Kanahele,* 857 F.2d 1245, 1269 (9th Cir.1988) (Wiggins, J., dissenting) (there is no such due process right), *vacated sub nom. United States v. Chavez–Sanchez,* — U.S. —, 109 S.Ct. 859, 102 L.Ed.2d 984 (1989); *United States v. McCoy,* 770 F.2d 647, 649–50 (7th Cir.1985) (quoting *United States v. Oxford,* 735 F.2d 276, 278 (7th Cir.1984), and rejecting challenge in pre-Guidelines case).

The Government argues that the constitutionality of mandatory minimum sentencing acts demonstrates the constitutionality of the Sentencing Guidelines. In *McMillan v. Pennsylvania,* 477 U.S. 79, 92, 106 S.Ct. 2411, 2420, 91 L.Ed.2d 67 (1986), the Court, upholding a state minimum sentencing act, noted that it would have "some difficulty fathoming why the due process calculus would change" when the legislature removed discretion from the court. Various mandatory sentencing acts have been upheld over the years by the courts, including our own. *E.g., United States v. Pineda,* 847 F.2d 64, 65 (2d Cir.1988) (per curiam).

■ We reject, given the Supreme Court's capital punishment cases and their language, *e.g., Lockett,* 438 U.S. at 603–05, 98 S.Ct. at 2964–65, appellant's argument that it would be arbitrary to distinguish between capital and noncapital cases in this context. We also view mandatory sentencing act cases as persuasive since the only substantive difference from sentencing under the Guidelines is a question going only to separation of powers or undue delegation concerns, namely, that there is a degree of political accountability arguably greater than is present under the Guidelines scheme, where formulae are developed by commission members appointed to six-year terms.[2] We note also the Third

2. District courts have argued that the criminal defendant in the past has always had either an individual judge or a particular act of Congress to thank, and to hold accountable, for his sen-

tence. *See United States v. Brodie,* 686 F.Supp. 941, 951–55 (D.D.C.1988); *United States v. Bolding,* 683 F.Supp. 1003, 1005 (D.Md.1988) (en banc). Any objection that it is a constitutionally

Circuit's reliance on the general acceptance of the retributive and deterrent purposes of sentencing, *see Frank*, 864 F.2d at 1008–09, which, while it cannot, of course, impair established constitutional rights, is evidence that a sentencing scheme emphasizing these purposes is not so fundamentally unfair as to warrant due process condemnation.

In the end, we hold that there is no constitutional right to judicial discretion in individualized sentencing. Appellant identifies no precedent to support such a right, even inferentially. One would suppose that such a right, if it existed, would surely have been recognized by now, given the varying mandatory minimum sentencing practices the federal government and the states have used in our nation's history. Indeed, *ranges* of sentences have been available from the days when judges (or juries) first began considering aggravating or mitigating circumstances. *See* Tappan, *Sentencing Under the Model Penal Code*, 23 Law & Contemp.Probs. 528, 529–31 (1958).

■ Appellant also argues that the Act establishing the Guidelines denies him due process because he cannot challenge the weight accorded the various factors used to calculate his sentence, i.e., that the Guidelines are too precise. We note that Vizcaino was sentenced, as the district court put it, "at the low end of the Guidelines," and that Vizcaino does not indicate any particular factor that was accorded excessive or inadequate weight in his case. This argument, then, is simply a more specific version of the individualized-sentencing argument we have just rejected, and it must be similarly rejected.

■ B. *Procedural due process.* Appellant also argues that the Act establishing the Guidelines violates procedural due process by denying him the articulated exercise of discretion by a trial court, and he suggests, by citing to us the district court decision that was reversed by the Third Circuit in *Frank, supra*, that it would be appropriate to apply the four-part balancing test set out in *Mathews v. Eldridge*, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976). This requires us at the outset, therefore, to determine whether a liberty interest is at stake. The Third Circuit found no such interest in *Frank* because it found no right to individualized sentencing. We analyze the problem more simply: The liberty interest is that in avoiding future incarceration. *See United States v. Romano*, 825 F.2d 725, 729–30 (2d Cir.1987) (applying *Mathews* to sentencing). We note that Supreme Court decisions rejecting procedural due process challenges to sentences hold only that there is no right to avoid serving a valid sentence or to have a particular sentence. *See Greenholtz v. Inmates of the Nebraska Penal and Correctional Complex*, 442 U.S. 1, 7, 99 S.Ct. 2100, 2103, 60 L.Ed.2d 668 (1979) (parole); *Gardner v. Florida*, 430 U.S. 349, 358, 97 S.Ct. 1197, 1204, 51 L.Ed.2d 393 (1977) (plurality) (the defendant "has no substantive right to a particular sentence within the range authorized by statute," but the sentencing process must meet the requirements of due process); *Meachum v. Fano*, 427 U.S. 215, 224, 96 S.Ct. 2532, 2538, 49 L.Ed.2d 451 (1976) (state's decision to transfer prisoner does not require hearing because "given a valid conviction, the criminal defendant has been constitutionally deprived of his liberty to the extent that the State may confine him and subject him to the rules of its prison system so long as the conditions of confinement do not otherwise violate the Constitution").

We find, however, that the Sentencing Guidelines provide—if nothing else—satisfactory procedural safeguards to satisfy the demands of the due process clause. The means by which a court should arrive at a sentence are now made quite explicit, and the court must, as we have said, provide a statement of its reasons for departure from the Guidelines. The defendant, as always, has the right to appear, to offer evidence, and to challenge the Government's evidence. *See United States v. Alves*, 688 F.Supp. 70, 80 (D.Mass.1988);

---

inappropriate body of people who determine the ranges for a given crime is subsumed in the

arguments that were made and rejected in the *Mistretta* case.

*see also Romano,* 825 F.2d at 728 (due process guarantees opportunity to ensure that district court considers reliable information); *cf. United States v. Fatico,* 579 F.2d 707, 713 (2d Cir.1978) (due process does not prevent use in sentencing of out-of-court declarations by unidentified informant where there is good cause for the nondisclosure of his identity and there is sufficient corroboration by other means). The only difference under the Guidelines is that the trial court's discretion is significantly reduced, but we have already decided that there is no constitutional right to such discretion.

II. *The vesting of sentencing authority in the prosecutorial branch.*

■ Appellant's final argument is that the Sentencing Reform Act violates due process by vesting excessive sentencing authority in the prosecutorial branch of the government. The President's appointment and removal power over the Sentencing Guideline commissioners, appellant argues, is the source of this problem. Noting that the prosecutor and the criminal defendant are adversaries, appellant relies on *Tumey v. Ohio,* 273 U.S. 510, 535, 47 S.Ct. 437, 445, 71 L.Ed. 749 (1927), and *Ford v. Wainwright,* 477 U.S. 399, 416, 106 S.Ct. 2595, 2606, 91 L.Ed.2d 335 (1986), for the proposition that executive control of sentencing violates due process. These authorities are not completely persuasive. *Tumey* involved a mayor-magistrate's financial interest in convictions, and *Ford* concerned a governor's direct responsibility for determining whether convicts sentenced to the death penalty were insane. Thus, both cases presented the problem of factfinding by a partial executive, while the Guidelines Commission does not specify results in particular cases.

Even if we were to agree for the purposes of argument that it would be fundamentally unfair for the executive branch to control sentencing—and we note that the unchallenged placement and operation of the Parole Commission in the executive branch makes this proposition questionable —we do not find that the President has an unlawful degree of control over the Guide-lines commissioners. The appointment provision, which requires the advice and consent of the Senate, 28 U.S.C. § 991(a) (Supp. IV 1986), is similar to that applied to federal judges, U.S. Const. Art. II, § 2, cl. 2. As *Mistretta* noted, the removal provision, which allows removal only for good cause, § 991(a), was "specifically crafted to prevent the President from exercising 'coercive influence' over independent agencies." *Mistretta,* —— U.S. at ——, 109 S.Ct. at 673 (quoting *Morrison v. Olson,* —— U.S. ——, ——, 108 S.Ct. 2597, 2616, 101 L.Ed.2d 569 (U.S. June 29, 1988), and *Humphrey's Executor v. United States,* 295 U.S. 602, 630, 55 S.Ct. 869, 874, 79 L.Ed. 1611 (1935)). Furthermore, the Commission must include federal judges, who are relatively immune to presidential pressure by reason of the protections of Article III.

In rejecting the constitutional challenges raised by the appellant we of course intimate no views on any other issues that may arise under the Guidelines.

JUDGMENT AFFIRMED.