878 F.2d 382
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Floyd FARROW, Charles C. Staten, and Gilbert J. Mims, a/k/a
William Lockett, Defendants-Appellants.
 Nos. 88-6207 to 88-6209.
 United States Court of Appeals, Sixth Circuit.
 June 28, 1989.
 
 Before ENGEL, Chief Judge, BOGGS, Circuit Judge, and BENJAMIN F. GIBSON,* District Judge.
 PER CURIAM.
 
 
 1
 Defendants Floyd Farrow, Charles C. Staten and Gilbert J. Mims appeal their convictions in the United States District Court for the Eastern District of Kentucky for possession with intent to distribute cocaine in violation of 21 U.S.C. Sec. 841(a)(1), carrying a firearm in relation to a drug trafficking offense in violation of 18 U.S.C. Sec. 924(c) and traveling in interstate commerce with the intent to carry on narcotics activity in violation of 18 U.S.C. Sec. 1952(a)(3). The defendants entered conditional guilty pleas reserving the right to appeal the adverse determinations of their motions to suppress evidence.
 
 
 2
 On February 6, 1988, the defendants were driving toward the Greater Cincinnati Airport when their car became disabled. An airport police officer stopped to offer assistance. Farrow, who was driving, asked the officer to call a wrecker and a taxi to continue to the airport. Pursuant to airport police procedure, the officer requested Farrow's license and radioed the information to the police station. While waiting for the wrecker, the officer invited the occupants to sit in the police cruiser due to the inclement weather. The officer requested identification from the other occupants, defendant Staten and his female companion. Staten had no identification with him but offered his name and social security number.
 
 
 3
 The officer received information by radio that Farrow's license was suspended and that he was wanted for an outstanding Michigan warrant for carrying a concealed weapon and failure to appear. Upon the arrival of another officer, Farrow was arrested. Staten was then subjected to a pat down search for weapons during which the officer noticed a plastic baggie protruding from his pocket. The officer removed the baggie and determined that it contained marijuana. He then arrested Staten. The first officer then took Farrow and Staten to airport headquarters. The other officer remained to await the wrecker. While waiting, he discovered a loaded firearm beneath the front seat of the car.
 
 
 4
 Another officer at the airport was asked to locate the person whom the defendants were to meet. Farrow had mentioned that their friend was arriving from Los Angeles and Staten said it was his cousin. Defendant Mims was observed at the airport and, upon seeing the officer, nervously sought to avoid the officer's scrutiny. The officer approached Mims and asked who he was waiting for. He was told that Mims was waiting for his cousin Floyd Farrow. When asked for identification, he gave the officer a driver's license in the name of Lockett. The officer informed him that Farrow and Staten had been arrested. The officer then told Mims that he was looking for narcotics coming through the airport and asked to search a bag sitting at Mims's feet. Mims was told that he could refuse the search but he consented, and the officer found a second driver's license, with the name Mims, in the bag. When questioned about the two licenses with different names, Mims replied that his name was Mims, but that he used the name Lockett to gain more frequent flyer mileage. The officer determined that Mims's reply was suspicious and requested that he turn around for a pat down search. Mims twice tried to prevent the officer from searching one coat pocket as if he was trying to hide an object. The officer warned him to stop interfering and checked the pocket. He found a container of crack. Mims was arrested and later told the officers that he was to be paid $1,000 for the crack by Farrow when he arrived.
 
 
 5
 All three defendants moved to suppress the evidence seized in this case. After a hearing on these motions, the magistrate recommended that they be denied and the district court adopted the report. Thereafter, the defendants entered conditional guilty pleas reserving the right to appeal the adverse determinations of their suppression motions.
 
 
 6
 On appeal, the defendants argue various theories regarding suppression of the various pieces of evidence and each argues that the sentencing guidelines are unconstitutional. Further, defendant Farrow argues that the guidelines are unconstitutional as applied in his case.
 
 
 7
 The only unresolved issues in this appeal arose from the denial of the defendants' several motions to suppress at the time their conditional guilty pleas were offered and accepted. Although counsel for each of the defendants has addressed the thorough record with great care and discussed the appropriate authorities which pertain to the issue of admissibility of each item of evidence which was suppressed, we are satisfied upon a review of the entire record that the trial court did not err in denying any motion made by any defendant herein. While it may be reasonably argued by defendant Farrow that the trial judge erred in concluding that his relationship to the vehicle was such that he lacked standing to contest the search of it, we nonetheless conclude that it is apparent that the search was altogether lawful in other respects as incident to the arrest and as justified by the circumstances which existed at the time. See Belton v. New York, 453 U.S. 454 (1981); United States v. White, No. 88-5772, (6th Cir. March 28, 1989). The fact that the automobile was disabled along a major interstate bypass, and that unusual weather conditions existed at the time, (it was bitter cold at the time, with a windchill temperature of minus 33 degrees F.), together with all of the other circumstances at the scene made it apparent that no other reasonable course was available to the searching officers.
 
 
 8
 Regarding the appellants' arguments challenging the constitutionality of the sentencing guidelines, the Supreme Court, in Mistretta v. United States, 109 S.Ct. 647 (1989), squarely rejected the arguments that the Sentencing Reform Act constitutes an unconstitutional delegation of legislative authority and that it and the guidelines violate the constitutional principle of separation of powers. We are bound by that authority. Appellants also argued that the guidelines violate due process. This court has recently determined, in accordance with the other circuit courts which have considered this issue, that the guidelines do not violate due process. United States v. Jacobs, No. 88-3797 (6th Cir. June 8, 1989); United States v. Allen, No. 88-5739 (6th Cir. May 9, 1989); see also United States v. Vizcaino, 870 F.2d 52 (2d Cir.1989); United States v. Brittman, 872 F.2d 827 (8th Cir.1989); United States v. Frank, 864 F.2d 992 (3d Cir.1988); United States v. White, 869 F.2d 822 (5th Cir.1989). We agree with these determinations and find no due process violation in evidence here. Accordingly, we reject appellants' arguments on this issue. Finally, appellant Farrow contends that the guidelines are unconstitutional as they were applied to him because his sentence was adjusted upward because he refused to accept responsibility for his actions. However, contrary to Farrow's contentions, the record plainly shows that, in fact, his sentence was adjusted downward after he did in fact accept responsibility. Therefore, he has no complaint of injury on which to base a due process claim.
 
 
 9
 Accordingly, the judgment of the district court is AFFIRMED.