**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**John William THOMAS,**
**Defendant–Appellant.**

No. 88–2418.

United States Court of Appeals,
Tenth Circuit.

Sept. 5, 1989.

Michael W. Lilley, of Lilley & Macias, P.A., Las Cruces, N.M., for defendant-appellant.

(1) Defenses and objections based on defects in the institution of the prosecution.

William L. Lutz, U.S. Atty., and Larry Gomez, Asst. U.S. Atty., Albuquerque, N.M., for plaintiff-appellee.

Before McKAY, TACHA, and EBEL, Circuit Judges.

TACHA, Circuit Judge.

This is an appeal from a sentence imposed by the United States District Court for the District of New Mexico, applying the Sentencing Guidelines, 18 U.S.C. app. §§ 1B1.1–7A1.4 (guidelines). The issue on appeal is whether the guidelines violate the due process clause of the fifth amendment. With respect to the arguments raised in this appeal we hold that they do not and affirm.[1]

John William Thomas was found guilty by jury verdict of possession with intent to distribute more than fifty kilograms of marijuana in violation of 21 U.S.C. § 841(a)(1), (b)(1)(C). After the jury verdict but prior to sentencing, Thomas filed a motion to declare the guidelines unconstitutional. The trial judge implicitly denied this motion by sentencing Thomas under the guidelines, but nevertheless assigned an alternative sentence in the event the guidelines were ultimately adjudged unconstitutional.

Thomas offers three arguments on appeal, all of which are premised upon the due process clause of the fifth amendment. First, he argues that the sentencing procedures established by the guidelines unlawfully limit a sentencing court's ability to evaluate the particular circumstances of the defendant's case and to impose an appropriate sentence. Second, he argues that the sentencing process unlawfully prohibits a defendant from "meaningful participation" in sentencing by limiting his ability to present evidence relevant to sentencing. Finally, he argues that the guidelines un-

lawfully allow the prosecutor and the United States Sentencing Commission rather than the sentencing judge to determine a defendant's sentence.

I.

The United States Sentencing Commission (Commission) "is a body created under the Sentencing Reform Act of 1984, as amended (Act), 18 U.S.C. § 3551 *et seq.* (1982 ed., Supp. IV), and 28 U.S.C. §§ 991–98 (1982 ed., Supp. IV)." *Mistretta v. United States,* — U.S. —, 109 S.Ct. 647, 649, 102 L.Ed.2d 714 (1989). The Commission is comprised of the Attorney General or his designee, who is a nonvoting *ex officio* member, and seven voting members appointed by the President with the advice and consent of the Senate. 28 U.S.C. § 991(a). At least three of the voting members must be federal judges selected from a list recommended by the Judicial Conference of the United States. *Id.* The Act empowers the Commission to "promulgate and distribute to all courts of the United States ... guidelines ... for use of a sentencing court in determining the sentence to be imposed in a criminal case." *Id.* § 994(a)(1). The Commission must ensure that these guidelines "provide certainty and fairness in meeting the purposes of sentencing, avoiding unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar criminal conduct, while maintaining sufficient flexibility to permit individualized sentences when warranted." *Id.* § 991(b)(1)(B).

The Act provides detailed instructions to the Commission regarding the development of the guidelines. The guidelines must establish a recommended range of determinate sentences based in part on categories of offenses and the history and characteristics of the defendant.[2] In general, a sen-

---

1. After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed.R. App.P. 34(a); 10th Cir.R. 34.1.9. The cause is therefore ordered submitted without oral argument.

2. A range is determined according to a sentencing table which categorizes the characteristics of an offense and of the offender. The Act instructs the Commission to establish the categories of offenses after considering seven factors: (1) the grade of the offense; (2) the aggravating and mitigating circumstances of the offense; (3) the nature and degree of the harm caused by the

tencing court must select a sentence within a guideline's range but may depart from the guidelines if it "finds that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines." 18 U.S.C. § 3553(b). If a sentencing court departs from the guidelines, it must state the "specific reason for the imposition of a sentence different from that described." *Id.* § 3553(c).

In January 1989, the Supreme Court upheld the constitutionality of the guidelines and the Act against challenges that the Act constituted an unconstitutional delegation of legislative authority and that, together with the guidelines, the Act violated the constitutional principle of separation of powers. *Mistretta*, —— U.S. ——, 109 S.Ct. 647, 102 L.Ed.2d 714 (1989). Although the Supreme Court did not review a due process challenge to the guidelines, every circuit court addressing such challenges has refused to find a due process violation. *See United States v. Bolding*, 876 F.2d 21 (4th Cir.1989); *United States v. Pinto*, 875 F.2d 143 (7th Cir.1989); *United States v. Allen*, 873 F.2d 963 (6th Cir.1989); *United States v. Seluk*, 873 F.2d 15 (1st Cir.1989); *United States v. Brittman*, 872 F.2d 827 (8th Cir.1989); *United States v. White*, 869 F.2d 822 (5th Cir.) (per curiam), *cert. denied*, —— U.S. ——, 109 S.Ct. 3172, 104 L.Ed.2d 1033 (1989); *United States v. Vizcaino*, 870 F.2d 52 (2d Cir.1989); *United States v. Frank*, 864 F.2d 992 (3d Cir. 1988), *cert. denied*, —— U.S. ——, 109 S.Ct. 2442, 104 L.Ed.2d 998 (1989).

We have carefully considered the Thomas' due process arguments in light of his other circuit decisions, and we conclude that his arguments are without merit. We join the other circuits and hold that the Act and the guidelines promulgated thereunder do not violate Thomas' due process rights.

## II.

Thomas' first claim is essentially that the sentencing guidelines are violative of his due process right to have a judge make a discretionary individualized determination of an appropriate sentence. To support his argument, Thomas relies on several district court opinions holding that there is a due process right to individualized sentencing. *See, e.g., United States v. Brodie*, 686 F.Supp. 941 (D.D.C.1988); *United States v. Elliott*, 684 F.Supp. 1535 (D.Colo.1988); *United States v. Frank*, 682 F.Supp. 815 (W.D.Pa.), *rev'd in part*, 864 F.2d 992 (3d Cir.1988). The Third Circuit reviewed and rejected one of these district court opinions, holding that there is no federal substantive liberty interest in an individualized determination of an appropriate sentence. *See Frank*, 864 F.2d at 1008–10. We agree with the Third Circuit.

Although there are certain recognized substantive limits upon congressional power to determine sentences for federal offenses, *see id.* at 1008–09, none of these substantive limits have been transgressed in this case. The statutory scheme here permits departure from the guidelines in a

offense; (4) the community view of the gravity of the crime; (5) the public concern generated by the crime; (6) the deterrent effect that a particular sentence may have on others; and (7) the current incidence of the offense. 28 U.S.C. § 994(c)(1)–(7). The Act instructs the Commission to establish the categories of defendants after considering 11 factors, including the offender's age, education, vocational skills, mental and emotional condition, physical condition (including drug or alcohol dependence), previous employment record, family ties and responsibilities, community ties, role in the offense, criminal history, and degree of dependence upon crime for a livelihood. *Id.* at § 994(d)(1)–(11). Both the offense and the criminal history categories work in point systems: after a district

court finds the base offense level and criminal history category of each defendant, it can adjust by accounting for a variety of factors listed in the guidelines. *See* 18 U.S.C. app. §§ 2A1.1–4B1.3. These are categorized according to the nature of the offense, the offender's role in the offence, whether the offender obstructed the proceeding in any way, whether the offender accepted responsibility for his actions, and the offender's criminal history. *See id.* at §§ 3A1.1–3E1.1. The court then refers to the sentencing table, which integrates the offense and defendant categories to provide the appropriate sentencing range. *See id.* at ch. 5, part A. The defendant can dispute any of the factual findings used to determine the sentencing range.

proper case, and has not withdrawn all discretion from the sentencing court.

Under the Guidelines, sentencing judges retain discretion to accept or reject a plea bargain, to resolve factual disputes about the appropriate base offense level, to consider adjusting that base level for mitigating and aggravating circumstances, to choose from a range of sentences, to set probation conditions, and to determine when to depart from the Guidelines. *Brittman,* 872 F.2d at 828. Under historically accepted criteria, a sentence remains highly individualized, since the guidelines consider traditional factors such as the defendant's criminal history, the degree of seriousness of the crime, and a categorization of criminal offenses. *Seluk,* 873 F.2d at 17. As the Third Circuit noted, although "[w]e can conceive of sentencing guidelines imposing sentences short of the death sentence which are so disproportionate that they might be held to be cruel and unusual punishment[,] ... [t]he [challenged] guideline sentences are, if anything, a move forward, rather than away from, proportionality in sentencing." *Frank,* 864 F.2d at 1009.

Further, we agree that the recognition of individualized treatment in sentencing as a right inherent in the human condition would "be inconsistent with the generally accepted notion that both retribution, which focuses on the interests of the victim rather than the status of the defendant, and general deterrence, which focuses on the interests of society at large rather than the status of the defendant, are appropriate societal versions for imposing sanctions." *Id.* at 1009–10. The Second Circuit addressed the question of a due process right to individualized sentencing by simply noting that if such a substantive right existed, it most likely would have been recognized by this time, "in light of the variety of mandatory minimum sentencing practices that have been implemented in this country." *Vizcaino,* 870 F.2d at 56. Other circuits are in accord. *See Bolding,* 876 F.2d at 22–23 ("It is undisputed that Congress may enact mandatory and determinate sentencing laws, and it follows that Congress may effect the same circumscrip-

tion of sentencing discretion through the delegation of such power to the Guidelines Commission."); *Seluk,* 873 F.2d at 16 ("We find the contention that Congress can constitutionally mandate a sentence for a particular crime, but cannot, consistent with due process, legislate a comprehensive but flexible sentencing scheme, to be counterintuitive at best."); *White,* 869 F.2d at 825 ("If Congress can remove the sentencing discretion of the district courts, it certainly may guide that discretion through the guidelines."); *Allen,* 873 F.2d at 965 (quoting *White*).

The Supreme Court, moreover, has rejected several times in dicta the argument that there is a constitutional right to individualized sentencing in noncapital cases. Most recently, the Court stated in *Mistretta* that "the scope of judicial discretion with respect to a sentence is subject to congressional control." *Mistretta,* 109 S.Ct. at 650 (citing *ex parte United States,* 242 U.S. 27, 37 S.Ct. 72, 61 L.Ed. 129 (1916)). In another decision, Chief Justice Burger stated that, "in noncapital cases, the established practice of individualized sentences rests not on constitutional commands, but on public policy enacted into statutes." *Lockett v. Ohio,* 438 U.S. 586, 604–05, 98 S.Ct. 2954, 2964–65, 57 L.Ed.2d 973 (1978) (plurality).

We agree that because Congress has the power to completely divest the courts of their sentencing discretion and to establish exact, mandatory sentences for all offenses, Congress may circumscribe the court's sentencing discretion through the guidelines. Thomas refers us to no Supreme Court or appellate court opinion that identifies a constitutional guarantee to the discretionary, individualized determination of a criminal sentence. Accordingly, we hold that no substantive due process violation exists.

### III.

Thomas next contends that the sentencing guidelines violate his procedural due process rights because they deprive him of "meaningful participation" in the sentencing process by limiting the factors relevant

to sentencing. Thomas identifies the liberty interest at stake as the deprivation of personal liberty that is almost invariably the result of sentencing. Again, we disagree.

Procedurally, the only difference between the sentencing process under the guidelines and the prior indeterminate sentencing system is the reduction of the sentencing court's discretion. *Vizcaino*, 870 F.2d at 57. Thomas' argument that he was not allowed "meaningful participation" in the sentencing process is basically another version of the individualized sentencing argument we have already rejected. The guidelines provide "satisfactory procedural safeguards to satisfy the demands of the due process clause." *Id.* at 56. The guidelines define explicitly the means by which a court should determine a sentence, and require a sentencing court to justify any departure. *See* 18 U.S.C. § 3553(c). A defendant "has the right to appear, to offer evidence, and to challenge the Government's evidence." *Vizcaino*, 870 F.2d at 56. Finally, the primary purpose of the guidelines is to promote certainty and fairness in sentencing, not to diminish these factors. We hold that the guidelines are procedurally adequate for due process purposes.

## IV.

Thomas argues, finally, that the guidelines unconstitutionally allow the prosecutor and the United States Sentencing Commission to determine a defendant's sentence. Thomas argues that, in effect, the Sentencing Commission sets a defendant's sentence because the guidelines it has established reduce a court's sentencing discretion in order to make all sentences basically determinate. This argument merely restates the claim of a right to a discretionary assessment of an appropriate sentence, which we have already rejected.

Thomas contends further that, under the guidelines, the prosecutor can control the length of a defendant's sentence by management of the charging of offenses and plea bargaining practices. Thomas does not show, however, how his rights were violated in this way. Thomas was convicted as charged following a one-count indictment; he offers no evidence of bad faith or discrimination on the part of the prosecutor at any time during the criminal proceedings. Further, the Supreme Court has recognized that the prosecutor has broad discretion to determine what charges to bring. *United States v. Batchelder*, 442 U.S. 114, 124, 99 S.Ct. 2198, 2204, 60 L.Ed.2d 755 (1979). When the evidence against a defendant will support conviction under more than one statute, moreover, the Supreme Court has stated that "[t]he prosecutor may be influenced by the penalties available upon conviction, but this fact, standing alone, does not give rise to a violation of the equal protection or due process clause." *Id.* at 125, 99 S.Ct. at 2205. Accordingly, we reject Thomas' final argument.

We hold that the Act and the guidelines promulgated thereunder do not violate Thomas's due process rights.

AFFIRMED.