**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Michael James BRADY,**
**Defendant–Appellant.**

**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Andre Michelle LOWE,**
**Defendant–Appellant.**

**Nos. 89–50079, 89–50128.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Dec. 7, 1989.

Decided Jan. 30, 1990.

Carlton F. Gunn and Alan T. Launspach, Deputy Federal Public Defenders, Los Angeles, Cal., for defendants-appellants.

Jeffrey C. Eglash, Asst. U.S. Atty., Los Angeles, Cal., and Andrew Levchuk, U.S. Dept. of Justice, Washington, D.C., for plaintiff-appellee.

Before BROWNING, BOOCHEVER and REINHARDT, Circuit Judges.

BOOCHEVER, Circuit Judge:

These two cases raise the issue of whether the Sentencing Guidelines, facially or as applied, violate the defendants' fifth amendment right to substantive and procedural due process by limiting the sentencing discretion of district courts and infringing defendants' rights to individualized sentences. We agree with the ten circuits which have previously decided this issue and find that the Guidelines do not violate due process on these grounds.

## FACTS AND PROCEDURAL HISTORY

### Brady

Michael James Brady (Brady) was indicted October 18, 1988, on three counts of robbery of a bank or savings and loan association in violation of 18 U.S.C. § 2113(a) (1982). Brady pled guilty to the third count and on February 13, 1989, the district court reluctantly sentenced him under the Guidelines to 24 months in custody followed by four years of supervised release. The court refused to depart from the Guidelines based on Brady's family standing and the aberrational nature of his criminal behavior, believing that these were not appropriate grounds for departure.

### Lowe

Andre Michelle Lowe (Lowe) was indicted July 29, 1988, on one count of assaulting a federal employee in violation of 18 U.S.C. § 111 (1982). On September 21, 1988, following a bench trial, the district court found him guilty of the offense. On February 13, 1988, the court sentenced him under the Guidelines to 30 months in custody followed by one year of supervised release. Lowe claims that the court, when computing the sentence under the Guidelines, did not consider Lowe's psychological condition and his need for long term psychotherapy.

## DISCUSSION

Whether application of the Guidelines violates fifth amendment guarantees of due process is a question of law and is reviewed de novo. *See United States v. McConney*, 728 F.2d 1195, 1201 (9th Cir.) (en banc), *cert. denied*, 469 U.S. 824, 105 S.Ct. 101, 83 L.Ed.2d 46 (1984).

### Facial Due Process Claim

The defendants claim that the Guidelines are facially invalid because the "Guidelines are a mechanical application of sentencing procedures which severely restrict the district court's ability to assess the circumstances of a defendant's individual case in order to make a determination of the appropriate sentence." Citing the importance of individualized sentencing, they assert that the Guidelines' restrictions on judicial discretion violate their fifth amendment right to substantive and procedural due process.

The Supreme Court upheld the constitutionality of the Guidelines over challenges based on alleged violations of separation of powers and improper delegation of legislative authority in *Mistretta v. United States*, 488 U.S. 361, 109 S.Ct. 647, 102 L.Ed.2d 714 (1989), but has not addressed whether the Guidelines violate due process. The other circuits that have addressed this issue have unanimously concluded that the Guidelines do not infringe a defendant's fifth amendment right to substantive or procedural due process by limiting the sentencing judge's discretion to individualize a defendant's sentence. *United States v. Thomas*, 884 F.2d 540, 542–44 (10th Cir. 1989); *United States v. Harris*, 876 F.2d 1502, 1504–06 (11th Cir.), *cert. denied*, ——

U.S. ——, 110 S.Ct. 417, 107 L.Ed.2d 382 (1989); *United States v. Bolding*, 876 F.2d 21, 23 (4th Cir.1989); *United States v. Pinto*, 875 F.2d 143, 145–46 (7th Cir.1989); *United States v. Allen*, 873 F.2d 963, 966 (6th Cir.1989); *United States v. Seluk*, 873 F.2d 15, 17 (1st Cir.1989) (per curiam); *United States v. Brittman*, 872 F.2d 827, 828 (8th Cir.), *cert. denied*, —— U.S. ——, 110 S.Ct. 184, 107 L.Ed.2d 140 (1989); *United States v. Vizcaino*, 870 F.2d 52, 53–56 (2d Cir.1989); *United States v. White*, 869 F.2d 822, 825 (5th Cir.) (per curiam), *cert. denied*, —— U.S. ——, 109 S.Ct. 3172, 104 L.Ed.2d 1033 (1989); *United States v. Frank*, 864 F.2d 992, 1009–10 (3d Cir.) (decided only on substantive due process grounds), *cert. denied*, —— U.S. ——, 109 S.Ct. 2442, 104 L.Ed.2d 998 (1989).

Relying on dictum in the plurality opinion in *Lockett v. Ohio*, 438 U.S. 586, 603–05, 98 S.Ct. 2954, 2964–65, 57 L.Ed.2d 973 (1978) (opinion of Burger, C.J.), many of these courts have determined that no recognized substantive due process right to judicial discretion in individualized sentencing exists in noncapital cases. *See, e.g., Vizcaino*, 870 F.2d at 55–56. They have bolstered this conclusion by citing cases upholding the constitutionality of mandatory minimum sentencing statutes. *Id.* at 55 (citing *McMillan v. Pennsylvania*, 477 U.S. 79, 92, 106 S.Ct. 2411, 2419, 91 L.Ed.2d 67 (1986)). Several courts also noted

> the Third Circuit's reliance on the general acceptance of the retributive and deterrent purposes of sentencing, *see Frank*, 864 F.2d at 1008–09, which, while it cannot, of course, impair established constitutional rights, is evidence that a sentencing scheme emphasizing these purposes is not so fundamentally unfair as to warrant due process condemnation.

*Vizcaino*, 870 F.2d at 55–56; *see Thomas*, 884 F.2d at 543; *Allen*, 873 F.2d at 965.

■ We agree with the result of these decisions but find it unnecessary to base our decision on such broad grounds. Rather, we believe that the Guidelines do not infringe a defendant's right to an individualized sentence, whether or not such a right is constitutionally mandated. The Guidelines limit a sentencing judge's discretion, but "[a] sentence under the guidelines continues to be highly 'individualized' under the historically accepted criteria" including "the defendant's criminal history, the degree of seriousness of the crime, as well as a more or less refined categorization of criminal offenses." *Seluk*, 873 F.2d at 17. Moreover, "if a trial judge deems a particular factor not to have been adequately taken into account in the guidelines, he is permitted to depart from them." *Id.* (citing 18 U.S.C. § 3553(b) (1988)). By requiring the sentencing court to consider all relevant factors and to articulate reasons for departing from such consideration, the Guidelines potentially pose fewer due process concerns than the pre-Guidelines sentencing practice of allowing nearly unfettered judicial discretion.

> The guidelines were conceived and developed to avoid what many had perceived as a principal unfairness of the criminal justice system: the imposition of dramatically disparate sentences by different judges for like crimes committed in like circumstances. The strong hope is that rather than offend due process, the guidelines—properly administered—will greatly advance the fairness of criminal sentencing.

*Seluk*, 873 F.2d at 17 (citations omitted).

A majority of an en banc panel of district court judges from the Central District of California disagreed in *United States v. Ortega Lopez*, 684 F.Supp. 1506, 1513–14 (C.D.Cal.1988) (en banc), a case the defendants cite as persuasive authority to support their position. While the court acknowledged that the Guidelines provide for consideration of individual factors, it found

> the rigid, computerized nature of the guidelines—which assign positive or negative numerical values to various sentencing factors and "adjustments"—precludes the trial court from *weighing* the importance of aggravating and mitigating factors relating to both the offender and the offenses of conviction. This weighing responsibility of the trial judge rests at the core of due process. Further, the Guidelines offend the guaran-

ties of due process by depriving the defendant of the opportunity to affect the court's weighing of all relevant factors at the time of sentencing.

*Id.* at 1513 (citing *United States v. Frank,* 682 F.Supp. 815, 819 (W.D.Pa.1988), *modified,* 864 F.2d 992, 1009–10 (3rd Cir.), *cert. denied,* — U.S. ——, 109 S.Ct. 2442, 104 L.Ed.2d 998 (1989)) (emphasis in original and citations omitted).

We believe the en banc majority's focus on the role of the sentencing court is misplaced. As the dissent explained, "[w]e judges, who with remarkable uniformity believe that we can do a better job of fitting the sentence to the crime and the criminal than can any chart or grid, or numerical evaluation of factors, must refrain from the temptation to classify our own beliefs in this respect as constitutional dogma." *Ortega Lopez,* 684 F.Supp. at 1520 (Hupp, J., dissenting). Judicial, as opposed to legislative, weighing of sentencing factors does not "rest at the core of due process" in this context. Rather, *consideration* of those factors lies at the heart of the right to individualized sentencing.

That was the thrust of this court's decision in *United States v. Barker,* 771 F.2d 1362 (9th Cir.1985), which defendants also cite in support of their position, and on which the *Ortega Lopez* court heavily relied. *Barker* stressed the importance of individualized sentencing and that "a criminal sentence must reflect an individualized assessment of a particular defendant's culpability rather than a mechanistic application of a given sentence to a given category of crime." *Id.* at 1365. But the court's focus in *Barker* was on the impropriety of imposing a criminal sentence based entirely on the *crime,* without regard to the individual convicted of that crime.

> Our concern is less the appropriateness of a given criminal sentence than the propriety of the process through which sentence was imposed. Specifically, do the four corners of the record indicate that the district court actually and adequately considered the factors necessary to insure that each individual defendant

was assessed and sentenced *as* an individual?

*Id.* at 1365–66 (emphasis in original). The Guidelines require just such an assessment and therefore do not contravene the principles enunciated in *Barker. See United States v. Kidder,* 869 F.2d 1328, 1334 (9th Cir.1989) (upholding a minimum sentencing provision, noting that "nothing in *Barker* suggests that sentencing judges must be free to impose whatever sentence they believe is appropriate"); *Ortega Lopez,* 684 F.Supp. at 1519 n. 11 (Hupp, J., dissenting) ("The clear implication of the opinion is that the multiple factor approach to sentencing decisions is desirable, but the opinion does not suggest or hint that only judges, to the exclusion of Congress, may implement the multi-factor approach."). We conclude that the Guidelines do not implicate the substantive due process concerns that underlie *Barker.*

■ Similarly, the Guidelines do not violate procedural due process, to the extent that procedural can be distinguished from substantive due process in this context. The procedure by which sentence is imposed must meet constitutional standards.

> [I]t is now clear that the sentencing process, as well as the trial itself, must satisfy the requirements of the Due Process Clause. Even though the defendant has no substantive right to a particular sentence within the range authorized by the statute, the sentencing is a critical stage of the criminal proceeding.... The defendant has a legitimate interest in the character of the procedure which leads to the imposition of sentence even if he may have no right to object to a particular result of the sentencing process.

*Gardner v. Florida,* 430 U.S. 349, 358, 97 S.Ct. 1197, 1204–05, 51 L.Ed.2d 393 (1977) (plurality opinion of Stevens, J.) (citation omitted).

"Once it is determined that due process applies, the question remains what process is due.... [D]ue process is flexible and calls for such procedural protections as the particular situation demands." *Morrissey v. Brewer,* 408 U.S. 471, 481, 92 S.Ct. 2593,

2600, 33 L.Ed.2d 484 (1972). In the sentencing context, "[d]ue process requires that a defendant be given an opportunity to assure the accurate presentation of reliable sentencing information to the district court." *United States v. Romano,* 825 F.2d 725, 728 (2d Cir.1987).

> Procedurally, the only difference between the sentencing process under the guidelines and the prior indeterminate sentencing system is the reduction of the sentencing court's discretion.... The guidelines define explicitly the means by which a court should determine a sentence, and require a sentencing court to justify any departure. *See* 18 U.S.C. § 3553(c). A defendant "has the right to appear, to offer evidence, and to challenge the Government's evidence."

*Thomas,* 884 F.2d at 544 (quoting *Vizcaino,* 870 F.2d at 56). In short, "the Sentencing Guidelines provide—if nothing else— satisfactory procedural safeguards to satisfy the demands of the due process clause." *Vizcaino,* 870 F.2d at 56.

The defendants urge that, like the district court in *Ortega Lopez,* this court should apply the balancing test of *Mathews v. Eldridge,* 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976), to determine the procedural sufficiency of the Guidelines. The result of that application, however, would not support the defendants' position. As the Supreme Court explained the test,

> identification of the specific dictates of due process generally requires consideration of three distinct factors: First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Id.* at 335, 96 S.Ct. at 903. The *Ortega Lopez* court applied the test as follows:

> A defendant's liberty interest affected by criminal sentencing is substantial. The formulaic nature of the Guidelines creates a great risk of error by giving inadequate consideration to the particular facts of a defendant's case. Revesting the court with its traditional duty of discretion both decreases the risk of error by maximizing the individualized nature of sentencing, and is a lesser burden on the courts, probation departments and counsel than use of the complicated and cumbersome Guidelines.

684 F.Supp. at 1513–14. A defendant's liberty interest is undeniably substantial, but the risk of an erroneous deprivation of that interest is no greater—and arguably less— under the Guidelines than under traditional sentencing procedures. The Senate Report accompanying the Sentencing Reform Act of 1984 noted several studies which found wide disparities among sentences for similarly situated defendants resulting from broad judicial sentencing discretion. *See* S.Rep. No. 225, 98th Cong., 2d Sess. 41–46 (1983), *reprinted in* 1984 U.S.Code Cong. & Admin.News 3182, 3224–29. According to one study,

> while 45 percent of the variance in sentences for hypothetical cases was attributable to differences in offense and offender characteristics, 21 percent was directly attributable to the fact that some judges tend to give generally tough or generally lenient sentences, and 22 percent of the variation was attributable to interactions between the "judge factor" and other factors. For example, some judges sentence more harshly for a particular offense than other judges even though they do not sentence more harshly overall, and some judges sentence relatively more harshly than other judges if the defendant has a prior record.

*Id.* at 44, *reprinted in* 1984 U.S.Code Cong. & Admin.News at 3227 (citing IN-SLAW, Inc., and Yankelovich, Skelly, and White, *Federal Sentencing: Toward a More Explicit Policy of Criminal Sanctions* III–17 (1981)) (footnotes omitted). The possibility of past erroneous deprivations of liberty in traditional sentencing would not justify different, but nevertheless erroneous, deprivations under the Guidelines. We cannot say, however, that

the more structured exercise of discretion under the Guidelines, on its face, poses a substantial risk of such error.

Moreover, the government's interest in the use of the Guidelines is substantial. The Guidelines represent Congress' attempt to remedy the two "serious impediment[s] to an evenhanded and effective operation of the criminal justice system" inherent in the traditional indeterminate sentencing system: "the great variation among sentences imposed by different judges upon similarly situated offenders ... [and] the uncertainty as to the time the offender would spend in prison." *Mistretta*, 109 S.Ct. at 651. This interest certainly justifies the additional burden the Guidelines impose on the courts. Even under the test in *Mathews v. Eldridge*, therefore, the Guidelines easily survive procedural due process scrutiny.

### Due Process Claims as Applied

▮▮▮ As the court in *Brittman* noted, the conclusion that the Guidelines do not facially violate due process "does not foreclose due-process challenges to the Guidelines as applied in individual cases." 872 F.2d at 828. The defendants claim that the Guidelines as applied in their cases violated their individual due process rights. Specifically, they challenge the failure of the Guidelines to allow the district court to fully consider a defendant's family and community standing (Brady) or psychological condition (Lowe).

This argument seems to be merely a more specific facial challenge to the Guidelines, and as such would be subsumed within our decision of that issue. *See Harris*, 876 F.2d at 1504. An as applied due process challenge, as the *Brittman* court stated, would be more appropriate when a defendant claimed that the Guidelines "are being applied without giving defendants an appropriate opportunity to contest the facts bearing upon the various predicate factors that the Guidelines make relevant to sentencing." 872 F.2d at 828. As in *Brittman*, the defendants here make no such claim.

To the extent the defendants state a separate as applied due process claim, how-

ever, they fail to demonstrate why the particular factors they enumerate are essential to an individualized sentence. *Barker* focused on the sentencing court's duty to assess the culpability of a particular defendant. 771 F.2d at 1365. Psychological condition (to the extent it is not a defense to the crime charged) and family and community standing are far less indicative of culpability than factors such as the offense itself, the defendant's criminal history, or the manner in which the offense is committed. More importantly, the Guidelines allow the sentencing court to consider a defendant's mental and emotional conditions, previous employment record, family ties and responsibilities, and community ties. *See* United States Sentencing Commission, *Guidelines Manual* §§ 5H1.3, 5H1.5, & 5H1.6 (Nov.1989). While "not ordinarily relevant in determining whether a sentence should be outside the guidelines," these factors may be relevant and considered by the sentencing court in determining what sentence to impose within the applicable Guideline range, as well as in other aspects of sentencing. *See id.* § 5H1.3 ("Mental and emotional conditions, whether mitigating or aggravating, may be relevant in determining the length and conditions of probation or supervised release."); *id.* § 5H1.5 (employment record relevant when sentencing options available and when determining length and conditions of supervision); *id.* § 5H1.6 (family ties and responsibilities relevant when imposing restitution or fines and when determining length and conditions of supervision).

In light of these provisions, the defendants' argument is reduced to challenging the *weight* accorded to these factors under the Guidelines, rather than the absence of the Guidelines' *consideration* of them. Individualized sentencing has never included the right to challenge the weight given to various sentencing factors. The defendants could not have challenged the weight accorded these factors under the traditional discretion of the sentencing court. It is difficult to see how the Guidelines infringe these defendants' individual due process rights by similarly precluding such chal-

**544**

lenges. Therefore, the Guidelines as applied to both defendants did not violate their due process rights.

## CONCLUSION

The Sentencing Guidelines do not violate substantive or procedural due process, either on their face or as applied to these defendants, by limiting the sentencing discretion of the district court. The district courts' decisions as to both defendants, therefore, is affirmed.

AFFIRMED.

REINHARDT, Circuit Judge, concurring specially:

I concur in the result. I do not agree that the Guidelines "potentially pose fewer due process concerns than the pre-Guidelines sentencing practice." Nor do I agree that the risk of deprivation of a defendant's liberty interest is arguably less under the Guidelines than under traditional sentencing procedures. In fact, I see little to commend the Guidelines in any respect. The strict limitations they impose on the traditional sentencing discretion of district judges run contrary to the basic principle which should govern modern sentencing— individualized consideration of the offender, the crime, and all of the relevant facts and circumstances relating to both. *United States v. Barker*, 771 F.2d 1362, 1365 (9th Cir.1985). Nevertheless, under our Constitution, it is Congress which has the authority to determine fundamental sentencing policy. When in doing so it acts within the limitations imposed by that document, we are required to uphold its action. Here, I agree with the majority that the Guidelines do not offend the due process clause on its face or as applied. Accordingly, I concur that we must affirm the district court.