**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Reggie LeROY, Defendant–Appellant.**

**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Darren HARRIS, Defendant–Appellant.**

Nos. 92–5086, 92–5087.

United States Court of Appeals, Tenth Circuit.

Jan. 26, 1993.

As Corrected Feb. 11, 1993.

Jeffrey D. Fischer, Tulsa, OK, for defendant-appellant, Reggie LeRoy.

C.W. Hack of Flowers, Harman, Hack & Finlayson, P.A., Tulsa, OK, for defendant-appellant, Darren Harris.

Jim Swartz, Asst. U.S. Atty. (Tony M. Graham, U.S. Atty., with him on the briefs), Tulsa, OK, for plaintiff-appellee.

Before McKAY, Chief Judge, ANDERSON, Circuit Judge, and MECHEM,* Senior District Judge.

STEPHEN H. ANDERSON, Circuit Judge.

Reggie LeRoy and Darren Harris are before us a second time on appeal from sentences imposed for convictions arising from their participation in a crack cocaine distribution operation in Tulsa, Oklahoma.[1] They both contend that the district court erred in refusing to allow them discovery of unpublished data considered by the United States Sentencing Commission ("Commission") in formulating the United States Sentencing Guidelines ("guidelines"). Le-Roy describes the error as constitutional— a denial of due process; Harris is not precise on the point. The arguments of both can also be construed as a contention that the district court misapplied the guidelines in sentencing them, as they hoped to prove through discovery.

In addition, Harris contends that because he was a juvenile during most of the time period involving the charged unlawful acts, his circumstance falls outside the guidelines used in sentencing him, and, consequently, the district court misapplied the guidelines. Harris also contends that the district court violated his constitutional right to due process when it refused to depart downward.

▇ We have consolidated these two appeals because of the common issue on discovery. We have no jurisdiction to review a district court's discretionary refusal to depart downward from the guidelines. *See United States v. Brownlee,* 970 F.2d 764, 766 (10th Cir.1992); *United States v. Gines,* 964 F.2d 972, 976 (10th Cir.1992), *cert. denied,* — U.S. —, 113 S.Ct. 1023, 122 L.Ed.2d 169 (1993). However, we have jurisdiction to review constitutional challenges to the guidelines, *United States v. Kuntz,* 908 F.2d 655, 657 (10th Cir.1990), as well as questions of law regarding their interpretation and application. *See* 18 U.S.C. § 3742. We review constitutional challenges and the district court's interpretation and application of the guidelines *de novo. Brownlee,* 970 F.2d at 764; *see also United States v. Shirk,* 981 F.2d 1382,

---

* The Honorable E.L. Mechem, Senior Judge, United States District Court for the District of New Mexico, sitting by designation.

1. Reggie LeRoy was convicted for violation of 21 U.S.C. §§ 846, 841(a)(1), and 841(b)(1)(A)(iii), and was sentenced to 320 months in prison followed by a five year term of supervised release. *United States v. LeRoy,* No. 89–CR–91–05–C (N.D.Okla. Feb. 14, 1990), *aff'd in part, rev'd in part,* 944 F.2d 787 (10th Cir.1991) (conviction affirmed; remanded to district court for resentencing due to the court's failure to make specific replies to LeRoy's objections to the presentence report as required by Fed.R.Crim.P. 32(c)(2)(D)), *resentenced* to the same term of imprisonment and supervised release (N.D.Okla. Apr. 9, 1992).

Darren Harris was convicted for violation of 21 U.S.C. §§ 846, 841(a)(1), 841(b)(1)(A)(iii), and 841(b)(1)(B)(ii), and was sentenced to 360 months in prison followed by a five year term of supervised release. *United States v. Harris,* No. 89–CR–91–06–C (N.D.Okla. Feb. 14, 1990), *aff'd in part, rev'd in part,* 944 F.2d 784 (10th Cir.1991) (conviction affirmed; remanded to district court for resentencing due to the district court's failure to make specific replies to Harris's objections to the presentence report as required by Fed.R.Crim.P. 32(c)(3)(D)), *cert. denied,* — U.S. —, 112 S.Ct. 903, 116 L.Ed.2d 804 (1992), *resentenced* to the same term of imprisonment and supervised release (N.D.Okla. Apr. 9, 1992).

1396 (3d Cir.1992) ("Whether circumstances have been adequately considered by the Sentencing Commission is subject to plenary review."); *United States v. Frederick,* 897 F.2d 490, 491 (10th Cir.), *cert. denied,* 498 U.S. 863, 111 S.Ct. 171, 112 L.Ed.2d 135 (1990). For the reasons stated below, we affirm the sentences imposed by the district court in these cases.

### I.

■ On remand for resentencing, both LeRoy and Harris sought a downward departure from the range of sentences prescribed by the sentencing guidelines, on the ground that their individual cases involved mitigating circumstances not adequately taken into account by the Commission in formulating the guidelines. *See* 18 U.S.C. § 3553(b); U.S.S.G. § 5K2.0. LeRoy cited a lack of youthful guidance and conduct which was not drug quantity determinative, relying on *United States v. Floyd,* 945 F.2d 1096 (9th Cir.1991), and *United States v. Batista–Segura,* No. S 89 CR. 377 (RWS), 1989 WL 125838 (S.D.N.Y. Oct. 19, 1989) (not designated for publication). Harris argued that most of his criminal involvement in the charged conspiracy occurred while he was a juvenile, under eighteen years of age.

Both appellants moved for leave to discover data used by the Commission in formulating the guidelines. They claimed that discovery was necessary to show that their circumstances fell outside the mathematical or statistical model used by the Commission in formulating base offense levels under U.S.S.G. § 2D1.1; in other words, that they fell outside the "heartland" of the guideline being applied. Appellant LeRoy's Brief-in-Chief at 5, 7. They also hoped their investigation would turn up other grounds for a downward departure and "reserved the right to assert additional grounds for departure upon completion of discovery." *Id.* at 8.

LeRoy stated his position to the district court as follows:

> In order to determine whether or not this defendant falls within the "heart-

land" carved out by the statistical model underlying the provisions of USSG 2D1.1(a)(3), the guideline provision under which defendant was sentenced, the relevant "heartland" must first be defined. Definition, in this instance, would consist of the use of court-approved discovery devices to identify with some specificity the statistical population which was considered by the Sentencing Guideline Commission in formulating § 2D1.1 relative to the idiosyncratic circumstances herein, e.g.: How many members of the population were teenagers? How many members of the population were convicted of substantive crimes as opposed to conspiracies? How many members of the population were limited in the extent of their conspiratorial accountability? How many members of the population were directly involved in framing the quantity of the transaction? How many members of the population lacked youthful guidance?

R.Supp.Vol. I, tab 173 at 2–3.

LeRoy, joined by Harris, also proposed the following alternative forms of discovery:

> Defendant would seek to depose a single spokesperson/records keeper on behalf of the Sentencing Guideline Commission, the locus presumably being Washington, D.C.
>
> . . . .
>
> In the alternative, defendant proposes that the Court order and direct the issuance of a subpoena pursuant to Rule 17 of the Federal Rules of Criminal Procedure directed to the United States Sentencing Guideline Commission and requiring a representative of the Commission to appear on a date certain for further evidentiary hearing herein, presumably in this forum or such other place as the Court might designate.
>
> In the alternative, defendant believes that the issue may also be addressed by way of written interrogatories but believes the two aforementioned devices

would be substantially more expedient given the opportunity for real time feedback.

R.Supp.Vol. I, tab 173 at 3–4.

The district court denied the motions for discovery, stating:

> The guidelines must be interpreted as if they were a statute or a court rule, with focus upon the language used. *See, United States v. Smith,* 900 F.2d 1442, 1446 (10th Cir.1990). To accept defense counsel's argument would be to turn every sentencing into a subjective swamp, as the Court attempted to look behind the guidelines language.... Such a course of action would be endless and would produce material of even less reliability than is legislative history in statutory interpretation.

R.Supp.Vol. I, tab 179 at 1–2.

■ We agree with the district court. Discovery of Commission files or deliberations relating to promulgation of the guidelines is prohibited. The controlling statute could not be more clear on the point:

> In determining whether a circumstance was adequately taken into consideration [by the Commission in formulating the guidelines], the court shall consider *only* the sentencing guidelines, policy state-

ments, and official commentary of the Sentencing Commission.

18 U.S.C. § 3553(b) (emphasis added).[2]

"Consideration" of the guidelines does not imply investigation into the processes or data from which they emerged. The reasons are obvious. Discovery into the guideline formulation process would be an intrusion into a quasi-legislative rulemaking function delegated by Congress solely to the Commission. 28 U.S.C. §§ 991, 994, 995. And, any conclusion drawn from such discovery would be a usurpation of the Commission's power.[3] Beyond that, the practical problems are too numerous and apparent to warrant discussion. Accordingly, no denial of due process, violation of law, or misapplication of the guidelines resulted from the district court's denial of the discovery sought by LeRoy and Harris.

## II.

■ Harris was involved in the charged conspiracy at least from March, 1989, through his arrest on July 9, 1989. *United States v. Harris,* 944 F.2d 784, 786 n. 3 (10th Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 903, 116 L.Ed.2d 804 (1992). His eighteenth birthday fell on June 19, 1989. *Id.* at 784. His premise is that because most of his criminal conduct took place while he was a juvenile he falls outside the "heartland" of the guidelines.

---

2. The Commission has statutory authority to collect and publish data and information. 28 U.S.C. § 995(a)(12)–(16). Material published by the Commission under that or other authority may be taken into account where appropriate.

3. "[T]he Commission enjoys significant discretion in formulating guidelines." *Mistretta v. United States,* 488 U.S. 361, 377, 109 S.Ct. 647, 657, 102 L.Ed.2d 714 (1989). For example, the Commission has "discretionary authority to determine the relative severity of federal crimes and to assess the relative weight of the offender characteristics that Congress listed for the Commission to consider." *Id.; see* 28 U.S.C. § 994(c)–(d). "The Commission also has significant discretion to determine which crimes have been punished too leniently, and which too severely. § 994(m). Congress has called upon the Commission to exercise its judgment about which types of crimes and which types of criminals are to be considered similar for the purposes of sentencing." *Mistretta,* 488 U.S. at 377–78, 109 S.Ct. at 657. In the process, the Commission is required by Congress to consider,

among other things, seven factors with respect to the formulation of offense categories, and eleven factors in establishing categories of defendants. 28 U.S.C. §§ 994(c)(1)–(7), 994(d)(1)–(11). Thus, the guideline promulgation process of the Commission, far from being merely mathematical or statistical, is "significantly political," and "the degree political judgment about crime and criminality exercised by the Commission and the scope of the substantive effects of its work does to some extent set its rulemaking powers apart from prior judicial rulemaking." *Mistretta,* 488 U.S. at 392–93, 109 S.Ct. at 664–65. The process includes extensive input and comment and culminates in individual decisions by each of the members of the Commission, with four votes being all that is necessary to promulgate a guideline, 28 U.S.C. § 994(a). The process is merged into the guidelines, policy statements and official commentary, and is by virtue of that reason alone not susceptible to discovery.

Thus, he contends that the district court misapplied the guidelines and denied him due process when guidelines "established to punish the conduct of adults were used to punish his conduct as a juvenile." Brief-in-Chief of Defendant–Appellant Harris at 12. Harris did not raise his constitutional argument before the district court; thus, we review that argument only for plain error. *See United States v. Brewer*, 983 F.2d 181, 183 (10th Cir.1993) (citing *United States v. Saucedo*, 950 F.2d 1508, 1516–17 (10th Cir.1991)).

We rejected Harris's premise that he is being punished as a juvenile when he was last before us. In his previous appeal he contended that his juvenile status during part of the conspiracy deprived the district court of jurisdiction over him. We held that the district court had jurisdiction because there was legally sufficient evidence "that Harris committed acts in furtherance of the conspiracy *after* attaining the age of eighteen." *Harris*, 944 F.2d at 786 (emphasis added). Likewise here, it is Harris's criminal conduct after he became an adult to which U.S.S.G. § 2D1.1(a)(3) applies. Thus, his juvenile status arguments are simply beside the point.

■ Nor does the fact that Harris was barely eighteen when he committed the illegal acts for which he was sentenced support an argument that the guidelines were misapplied. The guidelines make clear that: "Age (including youth) is not ordinarily relevant in determining whether a sentence should be outside the applicable guideline range." U.S.S.G. § 5H1.1.[4] A district court may consider age in the context of deciding where to sentence within the guideline range, *see United States v. Mondello*, 927 F.2d 1463, 1469–70 (9th Cir. 1991); *United States v. Garcia*, 919 F.2d 1478, 1481 (10th Cir.1990); *see generally United States v. Lara–Velasquez*, 919 F.2d 946, 955 n. 11 (5th Cir.1990), and that is what occurred here. At sentencing the district court stated: "Because of the defendant's role and participation in the in-

stant offense, this sentence *at the lowest end of the adult guideline range* is deemed appropriate." R.Supp.Vol. I, tab 190 at 4 (emphasis added).

Finally, we have previously rejected a similar due process challenge to the guidelines. *See United States v. Rutter*, 897 F.2d 1558, 1566–67 (10th Cir.):

[D]efendant argues that guideline sentencing is a denial of procedural and substantive due process because it (1) *fails to consider a defendant's age*, education, vocational skills, mental and emotional condition, physical condition and other individual concerns and (2) does not allow the defendant to challenge the weight accorded the various factors which determine the sentence. We rejected an essentially identical challenge in *United States v. Thomas*, 884 F.2d 540, 542–44 (10th Cir.1989), and this is an issue on which the circuits have been consistent.

(emphasis added), *cert. denied*, 498 U.S. 829, 111 S.Ct. 88, 112 L.Ed.2d 60 (1990); *cf. Thomas*, 884 F.2d at 542–43 (Sentencing Guidelines' restriction of judicial discretion to determine individualized sentence is not violative of due process protections). We likewise reject Harris's constitutional arguments based on age. His sentence under the guidelines did not violate due process. *See United States v. Lopez*, 938 F.2d 1293, 1296 (D.C.Cir.1991) ("the Guidelines' treatment of age [restricting its consideration in a request for downward departure] did not violate [defendant's] due process rights").

### III.

For the reasons stated above, the guidelines were not misapplied and no constitutional error occurred in the sentencing proceedings below. The sentences imposed upon LeRoy and upon Harris are AFFIRMED.

---

4. The Commission was instructed by Congress to consider the relevance of age in formulating the guidelines. 28 U.S.C. § 994(d)(1).