UNITED STATES of America,
Plaintiff–Appellee,

v.

Ervin LEE, Defendant–Appellant.

No. 94–1624.

United States Court of Appeals,
Seventh Circuit.

Argued Nov. 30, 1994.

Decided Feb. 2, 1995.

Barry Rand Elden, Asst. U.S. Atty., John Collins (argued), Office of U.S. Atty., Crim. Receiving, Appellate Div., Chicago, IL, for plaintiff-appellee.

John E. Horn, Tinley Park, IL (argued), for defendant-appellant.

Before BRIGHT,* BAUER and COFFEY, Circuit Judges.

BRIGHT, Circuit Judge.

The district court denied Ervin Lee a reduction of his ten-year prison sentence in response to the government's motion under Federal Rule of Criminal Procedure 35(b). Lee brings this appeal.

The underlying claim by Lee for reduction of sentence has its roots in the extensive and convoluted prosecution of the El Rukn street gang. Defendant Lee was indicted on October 26, 1989, with numerous other gang members. Lee became a cooperating witness and has testified in several proceedings relating to the prosecution and post-conviction hearings for several of the convicted gang members. Post-conviction proceedings addressed allegations and proof of prosecutorial misconduct in the conduct of some of the criminal cases and resulted in the granting of several new trials by Judge Aspen, Judge Conlon and Judge Holderman, the latter who presided over the instant matter.

After somewhat turbulent sessions of hearings during which the trial judge directed inquiry into (1) the views of alleged misconduct of government attorneys in the conduct of post-conviction hearings in the El Rukn cases, (2) the adequacy of disclosures by the assistant United States attorneys in the present proceedings and (3) the judges' assertions of doubts over the truthfulness of defendant Lee in prior post-conviction proceedings and statements made to FBI and other government investigators, the district court denied Rule 35(b) motion.[1]

In our view, the record supports a reduction in Lee's sentence. A review of the hearings indicates that the trial judge improperly focused the inquiry and interrogation on prosecutorial misconduct in the El Rukn proceedings, rather than giving fair consideration to the issues presented by Lee. Accordingly, we reverse and remand for further proceedings.

## I. BACKGROUND

We briefly set forth the facts. Lee initiated the present proceedings by filing a "Motion to Vacate Sentence and Compel the Government to Honor its Agreement to Move to Reduce Sentence or in the alternative, Motion to Withdraw Guilty Plea."

---

* The Honorable Myron H. Bright, Circuit Judge for the United States Court of Appeals for the Eighth Circuit, is sitting by designation.

1. Federal Rule of Criminal Procedure 35(b) provides:

> **(b) Reduction of Sentence for Changed Circumstances.** The court, on motion of the Government made within one year after the imposition of the sentence, may reduce a sentence to reflect a defendant's subsequent, substantial assistance in the investigation or prosecution of another person who has committed an offense, in accordance with the guidelines and policy statements issued by the Sentencing Commission pursuant to section 994 of title 28, United States Code. The court may consider a government motion to reduce a sentence made one year or more after imposition of the sentence where the defendant's substantial assistance involves information or evidence not known by the defendant until one year or more after imposition of sentence. The court's authority to reduce a sentence under this subsection includes the authority to reduce such sentence to a level below that established by statute as a minimum sentence.

That motion asserted, among other things, that on June 29, 1990, defendant pled guilty to count one, violation of 18 U.S.C. § 1962(d) (racketeering activity) and count three, violation of 21 U.S.C. § 846, conspiracy to distribute various controlled substances. Lee received a ten-year sentence under a written plea agreement, said sentence to be concurrent with any sentence imposed in a pending case before Judge Milton I. Shadur, 89 CR 580–11, and to be concurrent to any sentence imposed on pending Illinois state charges in Cook County, 89 CR 19658 and 90 CR 3140. Pursuant to the plea agreement, defendant testified at five different trials between April 1991 and April 1992. Lee also testified at three post-trial hearings before Judge Holderman, Judge Conlon and Judge Aspen between October 1992 and July 1993.

According to the petition, Lee asserted that Assistant United States Attorneys Hogan and Poulos promised that they would move for reduction of sentence on the basis that Lee had rendered subsequent assistance to the government after one year and had exceeded the cooperation initially contemplated of testifying at the most, two trials, rather than five. In addition, the petition noted a change in circumstances. The prosecution subsequently needed Lee's testimony in a state murder prosecution of an El Rukn defendant who had received a dismissal in federal court.

At the time of filing the petition under § 2255, the federal prosecutors had declined to file a Rule 35 motion for several reasons, including one that Judge Holderman would not accept a Rule 35 motion from the prosecutors because of the conflict between the judge and Assistant United States Attorney Hogan. The petition requested that the ten-year sentence be vacated, and that the prosecution honor its promises and file a Rule 35 motion to reduce sentence or grant Lee's motion to withdraw his guilty plea.

The government's response to defendant Lee's memorandum in support of jurisdiction for his appeal to this court relates the earlier proceedings. The response states crucial and undisputed facts in the record:

5. Contemporaneous with the filing of the Lee motion, the government negotiated and entered into plea agreements with approximately eight El Rukn defendants whose motions for new trial were pending before Judge Holderman in *United States v. Johnny Brown et al.*, 89 CR 909. Those defendants, like defendant Lee had served as Ambassadors in the El Rukns. The government agreed to sentences of six-years incarceration for those defendants. As a result, these defendants, who did not co-operate with the government, were subject to a shorter term of incarceration than defendant Lee, who had co-operated with the government.

6. The government deemed this sentencing imbalance to be unfair to defendant Lee. Thus, irrespective of the pending Lee motion, the government agreed to move to reduce defendant Lee's sentence. On February 3, 1994, the parties filed an agreed motion to reduce Lee's sentence pursuant to 28 U.S.C. § 2255 (the 'agreed § 2255 motion'). The parties relied upon the interests of justice and sentence uniformity amongst defendants of similar culpability as support for that motion. The district court, however, denied the agreed § 2255 motion and set a hearing date for the Lee motion.

## THE RULE 35(b) MOTION

7. On March 4, 1994, prior to the hearing on the Lee motion, defendant Lee orally amended that motion. Defendant Lee struck the portions of the Lee motion seeking to vacate his sentence and to withdraw his guilty plea. He further informed the court that he intended to proceed solely on his request for specific performance of an alleged commitment by the government to file a motion to reduce his sentence under Rule 35(b) of the Federal Rules of Criminal Procedure. 3–4–94 Tr. at 3.

8. At that point, while not acknowledging any commitment to do so, the government again expressed its desire to have defendant Lee's sentence reduced and agreed to file a Rule 35(b) motion. *Id.* at 4. The government, however, expressed its concern about the legal basis for such a motion. *Id.* at 5. The district court then postulated that the additional information provided by defendant Lee at the various

post-trial hearings may provide a sufficient basis for a Rule 35(b) motion. *Id.* at 6. Based upon those representations, the government agreed to file a Rule 35(b) motion.

9. On March 10, 1994, the government filed a Rule 35(b) motion to reduce defendant Lee's sentence (the 'Rule 35 motion'). In filing the Rule 35 motion, the government did not take any position with respect to the allegations in the Lee motion concerning a commitment by the government to file such a motion. Instead, it was the government's position that filing the Rule 35 motion, which was the substantive relief sought by defendant Lee, mooted the Lee motion. 3–14–94 Tr. 138.

10. On March 14, 1994, the district court conducted a hearing on the Rule 35 motion. During that hearing, defendant Lee informed the district court that the Rule 35 motion satisfied his request for specific performance. 3–14–94 Tr. 2. Thus, it appeared that the Lee motion had become moot. The district court never entered an order purporting to adjudicate the Lee motion. Moreover, at no point did defendant Lee request the district court to enter an order compelling the government to file a Rule 35 motion. In fact, the government had filed such a motion.

Government's Response at 3–5, filed Apr. 21, 1994 (footnotes omitted). The district court did not rule on Lee's § 2255 motion but did deny the Rule 35 motion.

In this case, the record shows that Lee's substantial assistance to the government concerned information or evidence not known by the defendant until one year or more after imposition of the sentence. The government's belated Rule 35 motion therefore complies with the rule. The district court acquired jurisdiction to consider the motion and thus a proper appeal lies from its order refusing Rule 35 relief. *See United States v. McAndrews,* 12 F.3d 273, 276–79 (1st Cir. 1993).

## II. DISCUSSION

In this appeal, Lee raises the following issues:

1. Whether there was an enforceable agreement for the government to make a Rule 35(b) motion to reduce the sentence.

We do not address this question because the government made such a motion.

2. Whether the government failed in its bargain by faint or half-hearted efforts.

The record indicates that the government properly pursued the motion.

3. Whether the district court abused its discretion in denying the Rule 35(b) motion. We focus our opinion on this issue.

We are of the view that at the hearing, the district court intermixed Lee's claims with its criticisms of procedures and conduct by the former United States attorneys relating to El Rukn gang cases thereby confusing the proceedings and depriving Lee a fair opportunity for consideration.

A few excerpts from the transcript may illustrate the dichotomy. The United States Attorney's Office took a consistent position that it believed that Lee should get some relief from his ten-year sentence. The government was reluctant initially to file a Rule 35 motion, expressing an unwillingness to acknowledge a firm commitment to do so by the prior prosecutors, Messrs. Hogan and Poulos, but then agreed to file the Rule 35 motion:

MR. ELDEN [Assistant United States Attorney]: Judge, we will file a Rule 35. We would like to have Mr. Lee's sentence reduced. We were here about a month ago and tried to do it by means of a 2255. We thought that that would be the best way to do it.

THE COURT: Okay, well,—

MR. ELDEN: We would like to have his sentence reduced.

THE COURT: Well, why don't you file a Rule 35 request, then, and we'll address it.

MR. ELDEN: All right.

THE COURT: We won't have a hearing. We don't need a hearing. The government is going to honor the commitment that was made.

MR. ELDEN: And I can tell you, Judge, our only concern with filing a Rule

35, this would be a guidelines—post-guidelines Rule 35,—

THE COURT: Right.

MR. ELDEN: —which would require us to set forth any new cooperation, in fact, that occurred after the guilty plea.

THE COURT: Right.

MR. ELDEN: And in that regard, Judge, we—

THE COURT: —that wasn't contemplated by the guilty plea.

MR. ELDEN: Right.

THE COURT: It's got to be new.

MR. ELDEN: That's correct.

THE COURT: I mean a lot of defendants who cooperate with the government plead guilty, then cooperate, and their subsequent cooperation doesn't give rise to a Rule 35.

MR. ELDEN: That's correct, Judge, and our only concern up to this point—we would have filed a Rule 35 before—is we have been back and forth with counsel as to the bases for the Rule 35, and if counsel will assist us in providing to us a legal basis for a Rule 35, I can tell you, Judge, we will file it, because we do want to have Mr. Lee's sentence reduced. That is our intention, that is our hope.

Now, of course, based on what happened last time, Mr. Lee can judge for himself the chances of it being granted, but we will certainly, Judge, file such a motion, and all we ask is that counsel assist us in providing us a legal basis for such a motion.
3–4–94 (12:24 pm) Tr. at 4–5.

The trial judge's reluctance to grant relief surfaced early in the proceedings. The judge suggested that the blame for new trials and subsequently reduced sentences on plea bargains for other defendants resulted from prosecutorial improprieties in which defendant participated by "drinking beer and smuggling things [apparently Ex–Lax] into the MCC [Metropolitan Corrections Center]." 3–14–94 Tr. at 103.

MR. ELDEN: Well, originally, Judge, and we still stand by it, we think his sentence should be reduced because it is out of line with the other sentences. Your Honor disagrees.

THE COURT [to prosecutor]: Your position is it's out of line with the other sentences as they were reduced but those sentences had to be reduced because of the government improprieties. This man engaged in some of those government improprieties, according to his statements to you, such as drinking beer and smuggling things into the MCC.

MR. ELDEN: Judge, he did a lot of other things, too. He cooperated with the government. He provided testimony, we believe truthful testimony, which led to the convictions of very serious criminals. He's provided a very important public service. We think that that should be taken into consideration. Even putting on the other side of the balance that he may have engaged in misconduct, and I'm not going to comment on that—your Honor has formed a viewpoint on that—but—

THE COURT: —based on the evidence that was before me.

MR. ELDEN: Very well, Judge. All I'm saying—

THE COURT: Apparently, you had the viewpoint, or the office had the viewpoint back in April of '92.

MR. ELDEN: All I'm saying, Judge, is our view is that when you look at the whole picture, including his substantial cooperation in the actual trials, when you weight it all—

THE COURT: In the trials?

MR. ELDEN: —in the trials,—

THE COURT: All right.

3–14–94 Tr. at 102–03.

Previous counsel for Lee during the pendency and settlement of criminal charges testified at the present hearing to prosecutors' promises that the prosecution had, at least by implication, agreed to file a Rule 35 motion for sentence reduction. The prosecution, Lee's former counsel and Lee all testified to Lee's helpfulness and continuing cooperation which extended beyond one year, including some information not known by the defendant until one year or more after imposition of his sentence. The proof was not in dispute.

The district court, however, focused its ire on perceived coverup motives from the prosecution.

[THE COURT addressing the Assistant United States Attorney]: When Mr. Horn [Lee's present counsel], on March 4th, said that all he wanted was specific performance of the commitment, and that's what he was reducing his motion to vacate and all the other aspects of it down to, he expected, and I expected, that the government would file a motion that would be in conformance with some commitment.

Well, what the motion—what the government filed was a motion that really isn't supported by fact. You filed a motion— and that's why I was asking you on the 4th, 'Isn't that enough?'

Mr. Lee was called by the defense in the post-trial hearings. The only cooperation, as far as I can tell, up until this information that I heard at the sidebar today, was that Mr. Lee gave an interview with two FBI agents as part of the Office of Professional Responsibility investigation, and the government, I believe, was taking the position that a substantial portion of that information that Mr. Lee provided to the FBI agent was not true.

And so what, in reality, you were trying to do, and the reason this is relevant, is you were trying to provide Mr. Lee with the benefit that his counsel had said government prosecutors had committed to provide him, without conceding there was such a commitment, and, in fact, your position just moments ago, where I asked you if you were going to have anyone come in and contradict the testimony of Mr. Wagner, and you said Mr. Hogan testified about this, and, frankly, he didn't, and you know it, you knew it when you provided me with those two pages of transcript, that's all you could come up with, not even close, and so the concern that I have is that the government is *trying to cover up here*, and, Mr. Lassar, I really think you ought to look into this. Maybe you better meet Ted Poulos and find out what it's all about. If you're going to come in and make an affirmative motion to reduce this

man's sentence, you better know what the facts are. That's why it's relevant.
3–14–94 Tr. at 131–32 (emphasis added).

The judge continued his criticism of the prosecutors of the El Rukn cases throughout the hearing. The judge's decision to deny relief did not relate to the proof offered during the hearing on Lee's cooperation, but rather focused on whether the district court should reject the prosecutor's recommendation because of the judge's dissatisfaction with the performance and conduct of the El Rukn attorneys for the government.

These further comments disclose the hearing's focus and the district court's expression of criticism and displeasure with the government, all of which spilled over to prejudice defendant Lee on non-essential issues to the proceeding and to imply that Lee's cooperation amounted to part of the government's alleged wrongdoings:

THE COURT: I believe that Mr. Lee cooperated with the government and is continuing to cooperate with the government. I believe that Mr. Lee has provided additional information. I think the government hasn't made full effort to provide that additional information to me, apparently only checking into it this afternoon without giving me any details to corroborate the information, and I believe that the government's motion, which doesn't include any of this additional information, is not sufficient to warrant a Rule 35(b) reduction. All this information that's dealt with in a cursory manner by the government in its Rule 35 motion was well known back in '92 at the conclusion of the post-trial hearings.

I think it's only because there are additional individuals who Mr. Lee can provide information about that the government has taken the position that it's taken. Mr. Lee engaged in criminal conduct while he was incarcerated at the MCC, and he engaged in that criminal conduct with government personnel.

The U.S. Attorney's office here in Chicago, which is seeking to provide this benefit to Mr. Lee, has basically washed its hands. The Office of Professional Responsibility's only obligation is to determine whether

individuals ought to remain with the Department of Justice or not. Mr. Lyon said that. So all of this criminal conduct that's been exposed that government personnel engaged in will never be prosecuted or even fully investigated, in my opinion.

I don't believe Mr. Lee was completely candid. I believe he's candid about some things, but some things, which perhaps hit too close to home, he wasn't candid about.

Mr. Lee had to be immunized in order to obtain all of whatever information he had. I don't know what it was that he said that was different. He certainly willingly waived the Fifth Amendment right when he was here in December of '92.

I frankly think that Mr. Wagner has vigorously represented Mr. Lee. I think that the inducements and the enticements of a reduction in sentence were dangled in front of Mr. Lee, perhaps not to induce him to say more, but perhaps to say less, to say less not about the people who were named as defendants in the indictment, but perhaps less about what was going on in the course of the prosecutions of these El Rukn cases.

*Id.* at 158–60.

The government has never charged Lee with improprieties leading to the granting of new trials of certain El Rukn defendants. Certainly Lee could not be expected to defend himself against charges not made and a determination arrived from the district court's dissatisfaction at the turn of events in those cases.

The district court's refusal to grant relief in part rested on wholly improper grounds, i.e., that further crimes ought to be investigated and prosecuted by the Department of Justice and to grant Lee relief would "moot" information still to be uncovered.

[THE COURT]: But there's a lot of information that still has not been uncovered. These cases are dwindling to a close, and at some point in time they will be done and there will be no further information that needs to be disclosed, because they will become moot, like if I were to reduce Mr. Lee's sentence, his situation really becomes moot.

But there's government impropriety that took place that has not been disclosed. I don't know who knows about it other than the participants. I don't think you know about it, Mr. Lassar. I don't know who does. The participants do. But they have probably tried to forget it, just like people have forgotten what Mr. Hogan said January 7th of '92, or maybe they haven't forgotten, they just don't want to say, because there's only Mr. Hogan as a witness, and Mr. Hunter, who is in a similar situation to Mr. Lee, having engaged in impropriety with the government, which was never disclosed, which was intended to not be disclosed, which the prior administration in the U.S. Attorney's office attempted to hide.

. . . .

We're never going to get to the bottom of it. The government was afraid that we would, and that's why, perhaps, you tried to recuse me back in '92. But cases have to move on, like this one. Mr. Lee was sentenced, and will remain sentenced. I believe the sentence was fair at the time that it was entered. I believe that there's nothing that has occurred since that time that would cause me to reduce that sentence. And, frankly, I believe there are further crimes that he engaged in that ought to be prosecuted in order to deter other people from engaging in those crimes.

If the Department of Justice doesn't share my view, that's the Department of Justice's prerogative. They don't have to share my view. That's why we have separation of powers in this country.

I have now said more than I should have, since I've talked over the time period that I had alloted for this case.

The bottom line is that the government's motion to reduce the sentence of Mr. Lee will be denied.

*Id.* at 161–63.

Finally, the district court concluded with sharp criticism of prior Assistant United States Attorney Hogan:

MR. HORN: One thing, Judge. Excuse me. Do you find that there was a commitment?

THE COURT: I believe that Mr. Hogan, based on the testimony of Mr. Wagner, and based upon my experience of watching Mr. Hogan in court, and hearing what other lawyers say about Mr. Hogan as they address me on the record, is that Mr. Hogan held out an enticement. Mr. Hogan knew there were improprieties going on at the time. He knew there were improprieties going on in the summer of '91. Mr. Hogan knew there were improprieties going on in 1989 when he deep-sixed that Rosenthal memo that came over here from the Bureau of Prisons.

And so I think what Mr. Hogan did was he dangled out an inducement and an enticement. I think Mr. Wagner was truthful in his testimony. Mr. Wagner said there wasn't any promise. But the benefit, the benefit, of a likely Rule 35 motion, in my opinion, rises to the level of something that should be utilized to cross examine a government witness, because it is something that would cause a witness to be biased in favor of the government.

You know, it was almost—not quite a conditional thing, but, you know, Mr. Lee had more cases to testify in, Mr. Lee had already testified, and Mr. Lee had to keep quiet about the improprieties that Mr. Lee knew about, that Mr. Hogan knew Mr. Lee knew about.

So that's my assessment of really what occurred, and so to answer the question yes or no, there was an inducement and an enticement. There was not a commitment, because Mr. Hogan was too cunning to actually commit. Mr. Hogan is a very bright individual. He's a person who has a great recollection of facts and details. When Mr. Wagner testified that Mr. Hogan kept asking him, 'Well, when is this due? When was this sentence?', I've watched Mr. Hogan. Mr. Hogan knew every date that he needed to know, and he knew the date that Mr. Lee was sentenced, and he knew the date of when that Rule 35 opportunity would run out. He didn't have to ask. But yet he did ask Mr. Wagner. It was part of the inducement and the enticement.

Mr. Hogan was not a credible person, he was not a credible witness, and, frankly, he hid a lot of government improprieties, and he induced others to do so, some more subtly than others.

The motion to reduce, as I said, will be denied. I don't think the government has supported, properly supported, a motion to reduce in this case.

*Id.* at 163–65.

Thus, it remains unclear whether the district court ever acknowledged the basis for the Rule 35 motion. Whether a commitment existed for the prosecution to make such a motion became irrelevant as the motion was made, evidence produced and a basis for relief shown.

We conclude that on this record, Lee's rights were not adequately considered by the district judge who conducted a wide-ranging criticism and dialogue on the misconduct of government counsel in the El Rukn cases and seemed to charge Lee with complicity because he, as a witness in those cases, accepted favors from the government.

We do not doubt the concern and sincerity of Judge Holderman's ire at government counsel whose conduct required setting aside many El Rukn defendants' convictions. We doubt, however, that such blame should extend to Lee. What is eminently clear in this proceeding is that Lee, a cooperating witness, has received a very heavy sentence as compared to other El Rukn defendants whose crimes were similar but who have not cooperated. Lee has placed himself in considerable risk and danger in so doing and, as we understand it, is or was under witness protection.

We think Lee has shown entitlement to relief of a reduced sentence, certainly not more than the six years served by other El Rukn defendants referred to in this proceeding, if not less. However, under Rule 35, that prerogative remains with the district court.

We conclude that the trial court abused its discretion in the manner in which it conducted the hearing which resulted in denial of relief to Lee on improper grounds. We remand this case for further proceedings, con-

sistent with this opinion. On remand, another district judge should be assigned to this case. *See Montiel v. Los Angeles,* 2 F.3d 335, 344 (9th Cir.1993).