**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**FEB 17 1998**

**PATRICK FISHER**
**Clerk**

**UNITED STATES OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

GREG ZACHERY FLOREZ,

    Defendant - Appellant.

No. 97-4055

D. Utah

(D.C. No. 96-CR-75J)

---

### ORDER AND JUDGMENT[*]

---

Before **ANDERSON**, **McKAY**, and **LUCERO**, Circuit Judges.

---

After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed. R. App. P. 34(a); 10th Cir. R. 34.1.9. The case is therefore ordered submitted without oral argument.

Greg Zachery Florez pled guilty to one count of possession with intent to distribute 500 grams of cocaine in violation of 21 U.S.C. § 841(a)(1). He was

---

[*]This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

sentenced to 70 months' imprisonment after the court denied the government's motion for a downward departure for substantial assistance to authorities. Mr. Florez appeals the sentence, arguing: (1) the district court erred in refusing to grant the substantial assistance downward departure because it relied on improper factors; (2) the court erred in including a "mischievous conduct" conviction in calculating his criminal history; and (3) even if the mischievous conduct conviction was properly included, the court misapprehended its authority to depart from the guidelines for over-representation of a defendant's criminal history category. We affirm.

## BACKGROUND

Mr. Florez was arrested on January 4, 1996, after purchasing one kilogram of cocaine from an undercover FBI agent. On April 17, 1996, the government filed a sealed indictment, charging Mr. Florez with violation of 21 U.S.C. § 841(a)(1), which carries a mandatory minimum sentence of five years' imprisonment under 21 U.S.C. § 841(b)(1)(B). After his arrest in January 1996 and until his arraignment in September 1996, Mr. Florez cooperated with the government by helping to effect the arrest of a major narcotics trafficker, by providing information about others involved in the drug trade, and by agreeing to testify on behalf of the government. On January 13, 1997, Mr. Florez pled guilty

-2-

in accordance with a plea agreement in which the government agreed to move for a downward departure for substantial assistance to authorities pursuant to 18 U.S.C. § 3553(e) and U.S. Sentencing Guidelines Manual ("USSG") § 5K1.1, p.s., and to recommend a three-point downward departure for acceptance of responsibility pursuant to USSG § 3E1.1.

The U.S. Probation Office prepared a presentence report (PSR), in which it recommended a criminal history category III, a base offense level of 26, plus two more points for possession of a firearm. R. Vol. VI ¶¶ 40, 41, 68. The PSR also recommended a three-point downward departure for acceptance of responsibility, resulting in a recommended sentencing range of 70 to 87 months' imprisonment. Id. at 38, 46, 97. After the PSR was issued, but prior to sentencing, the government filed a sealed motion for a departure below both the statutory minimum and the sentencing guidelines based on Mr. Florez's substantial assistance.

At sentencing, the district court was concerned that the written plea agreement did not mention an apparent agreement between the government and Mr. Florez not to include in the indictment a separate 18 U.S.C. § 924(c) count for using or carrying a gun in connection with the underlying possession charge. After inquiring of government counsel as to why the government did not arrest

the defendant immediately after the indictment was handed down, the following

exchange took place between the court and government counsel:

>THE COURT: Let me tell you this. In this court before me if you've got something pending, you process it, and you process it expeditiously. It's unfair to the process to simply let it be manipulated, which it is.
>
>MR. MacDOUGALL: I'll keep that in mind, Your Honor.
>
>THE COURT: Not only keep in mind, you follow it.
>
>MR. MacDOUGALL: I'll do that.
>
>THE COURT: That isn't how the system works.
>
>What else do you want to tell me about this young man other than his help?
>
>MR. MacDOUGALL: Well, Your Honor, I think the fact that he has cooperated in the manner in which he has, I think that he's recognized that what he did was wrong. I think he's attempted to atone for this conduct, and we would hope that Mr. Florez has had impressed upon him that he ought not to engage in this kind of future.
>
>THE COURT: Now, he had a gun when he was picked up, did he not?
>
>MR. MacDOUGALL: As I recall he did.
>
>THE COURT: Was he indicted for having a gun?
>
>MR. MacDOUGALL: No, Your Honor. That was part of what was discussed prior to the indictment being returned.
>
>THE COURT: Well, was there discussion with him before the indictment was returned?
>
>MR. MacDOUGALL: Yes, there was, Your Honor.
>
>THE COURT: So what we've got is an arrangement made with the United States attorney before an indictment ever came down.
>
>MR. MacDOUGALL: That's correct, Your Honor.
>
>THE COURT: And we do this in the name of uniformity and equality.

R. Vol. IV at 12-13.

The court then spent nearly the entire balance of the hearing inquiring of

the defendant and government's counsel why the agreement not to indict was not

-4-

included in the written plea agreement and why the plea agreement stated that no other agreements had been entered into. Defense counsel asked the court to continue the hearing so that he could discuss with Mr. Florez the possibility of withdrawing his guilty plea because of what had happened at the hearing that day. When the hearing resumed one week later, defense counsel indicated that Mr. Florez would not seek to withdraw his plea. The court spent the first portion of the hearing listening to defendant and counsels for the government and for the defense discuss the assistance provided by the defendant to the government, the defendant's criminal, employment, and health history, and the defendant's family and personal situation. The court then told Mr. Florez:

> Were there a gun charge here, you see, we would be dealing with five years going in on the gun charge, plus the narcotics charge, which the guidelines says are 70 to 87 months. If you added those together, you see, you're talking about almost 12 years, and that's a long time. Of course we don't have a gun charge. That was part of your deal.
>
> . . . .
>
> . . . I think, under the circumstances, quite frankly, Mr. Florez, you have done well. Purportedly the gun charge had substance, but it wasn't filed. That eliminated five years going in. That's a fairly substantial factor. It may or may not have been sustained, but at least part of your arrangement with the United States was that they wouldn't file it.
>
> The gun charge would have been a mandatory five years going in tacked on, and that's a substantial factor.

I've looked at this. I've looked at your history. Quite frankly, I've looked at the patterns. I respect the fact that you've got a boy who ought to be looking up to you. I respect the fact that you've got other problems.

But because of the nature of what's been going on for a period of time, it's the judgment of the Court that you be sentenced to the custody of the Bureau of Prisons for a period of 70 months . . . .

. . . .

I respect the fact that you've got a problem with your knee. There are medical facilities available within the system. Some are extremely good. I respect the fact that you may have other problems of a personal nature, and I've noted that. In my opinion, however, you should go with the marshals and commence what appears to me to be an appropriate sentence after recognizing your informal arrangement with the United States.

R. Vol. V at 10, 12, 13.

The court's 70-month sentence was at the low end of the sentencing range, reflecting a three-point downward departure for acceptance of responsibility but no departure for substantial assistance under § 5K1.1.

## DISCUSSION

### I. Departure for Substantial Assistance to Authorities

A district court's discretionary decision not to depart downward from the Sentencing Guidelines is unreviewable. See United States v. Munoz, 946 F.2d 729, 730 (10th Cir. 1991); United States v. Davis, 900 F.2d 1524, 1529-30 (10th Cir. 1990). However, we do have jurisdiction to review a sentence if the district

court erroneously concluded that it lacked the authority to depart, see United States v. Rowen, 73 F.3d 1061, 1063 (10th Cir. 1996); United States v. Maldonado-Campos, 920 F.2d 714, 718 (10th Cir. 1990), or if the district court imposed a sentence which violates the law or incorrectly applies the guidelines. See 18 U.S.C. § 3742(a);[1] United States v. Belt, 89 F.3d 710, 714 (10th Cir. 1996).

Mr. Florez claims that the district court improperly considered the government's agreement with defendant to not indict him for using or carrying a gun in denying the downward departure and that it thereby incorrectly applied the guidelines. While we have previously rejected an appellant's attempt to evade the jurisdictional bar by "characterizing the district court's refusal to depart [under § 5K1.1] as a misapplication of the guidelines" rather than as an exercise of

---

[1]18 U.S.C. § 3742(a) authorizes a defendant to appeal an otherwise final sentence if the sentence:

> (1) was imposed in violation of law;
> (2) was imposed as a result of an incorrect application of the sentencing guidelines; or
> (3) is greater than the sentence specified in the applicable guideline range to the extent that the sentence includes a greater fine or term of imprisonment, probation, or supervised release than the maximum established in the guideline range, or includes a more limiting condition of probation or supervised release under section 3563(b)(6) or (b)(11) than the maximum established in the guideline range; or
> (4) was imposed for an offense for which there is no sentencing guideline and is plainly unreasonable.

discretion, <u>United States v. Fitzherbert</u>, 13 F.3d 340, 344 (10th Cir. 1993), we believe Mr. Florez's appeal is not such an attempt. We therefore have jurisdiction pursuant to 18 U.S.C. § 3742(a), and we review de novo the court's application of the guidelines. See <u>United States v. LeRoy</u>, 984 F.2d 1095, 1096 (10th Cir. 1993).

We find the action of the district court somewhat troubling. The district court spent the vast majority of the two sessions of sentencing hearings focusing on the possible § 924(c) violation and discussing the pre-indictment agreement between defendant and the government as to that violation. While the court was justified in ensuring that correct procedure had been followed, we do not believe it should have held the defendant responsible for any mistakes made by the government in the indictment and plea process.

Defendant urges us to reverse and remand to a different district judge for reconsideration of the substantial assistance motion and for resentencing thereon as the Seventh Circuit did in <u>United States v. Lee</u>, 46 F.3d 674 (7th Cir. 1995). In <u>Lee</u>, the Seventh Circuit remanded for resentencing based on a Rule 35(b) motion because:

> Lee's rights were not adequately considered by the district judge who conducted a wide-ranging criticism and dialogue on the misconduct of government counsel in the [related cases] and seemed to charge Lee with complicity because he, as a witness in those cases, accepted favors from the government.

> We do not doubt the concern and sincerity of [the district judge's] ire at government counsel whose conduct required setting aside many [related cases'] defendants' convictions. We doubt, however, that such blame should extend to Lee. What is eminently clear in this proceeding is that Lee, a cooperating witness, has received a very heavy sentence as compared to [related cases'] defendants whose crimes were similar but who have not cooperated. Lee has placed himself in considerable risk and danger in so doing and, as we understand it, is or was under witness protection.

Lee, 46 F.3d at 681.

While we have many of the same concerns the Seventh Circuit had with respect to the sentencing of the defendant, the sentence in Mr. Florez's case reflects a less severe situation than that in Lee. We are no doubt concerned that the district court focused much attention on the prosecutor's discretion not to indict Mr. Florez for the possible § 924(c) violation and that it was less concerned with making specific findings as to the factors set forth in § 5K1.1(a), p.s.: the significance and usefulness of the assistance; the truthfulness, completeness, and reliability of the defendant's aid; the nature and extent of the assistance; any injury or risk of injury to defendant that may have resulted from his cooperation; and the timeliness of the assistance.

However, the factors listed in § 5K1.1(a), p.s., are not exclusive or exhaustive. That section dictates that the "appropriate reduction shall be determined by the court for reasons stated that *may include, but are not limited to*" the factors listed above. Id. (emphasis added). 18 U.S.C. § 3553 provides

other relevant factors to be considered in imposing a sentence, including: the history and characteristics of the defendant; the seriousness of the offense; the need for just punishment; deterrence; protection of the public; correctional treatment; guideline patterns and policy statements; sentencing disparity; and the need to provide restitution. See 18 U.S.C. § 3553(a). Viewing the sentencing hearing as a whole, we conclude that the court considered many factors in making its sentencing decision and that to the extent it considered the possible § 924(c) indictment and the pre-indictment agreement, it did so in determining whether a reduced sentence would be appropriate in light of all of the defendant's actions. In the end, Mr. Florez was not harmed by the court's inquiry into the side issues.

In no way do we suggest that it is appropriate for a district court to weigh against a defendant the procedural mistakes that the government may have made or the questionable discretionary decisions made by the prosecutor.

## II. Inclusion of "Mischievous Conduct" Conviction in Criminal History

Mr. Florez next argues that the court should not have included his prior state misdemeanor conviction for "mischievous conduct" for purposes of calculating his criminal history. Generally, misdemeanor offenses are included in a defendant's criminal history. See USSG § 4A1.2(c). However, a misdemeanor may be excluded from the criminal history calculation if it is similar to an offense

listed in § 4A1.2(c)(1) "unless: (1) the defendant was sentenced to the requisite term of probation or imprisonment, or (2) the prior offense was similar to an instant offense." United States v. Hooks, 65 F.3d 850, 855 (10th Cir. 1995); see USSG § 4A1.2(c)(1). Mr. Florez claims that his mischievous conduct conviction is similar to disorderly conduct or disturbing the peace, which are listed in § 4A1.2(c)(1), and that his minimal sentence for that offense excludes it from his criminal history.

The Utah criminal code contains no offense for "mischievous conduct" but does include the offenses of "criminal mischief" and "disorderly conduct." See Utah Code Ann. §§ 76-6-106, 76-9-102. Criminal mischief is an offense that is generally more serious than disorderly conduct under Utah law. A criminal mischief conviction requires a showing of intentional, willful, or reckless damage or potential damage to property and ranges from a third degree felony to a class C misdemeanor. See Utah Code Ann. § 76-6-106. Disorderly conduct, on the other hand, deals with public inconvenience or annoyance, does not involve damage or potential damage to property, and is either a class C misdemeanor or an infraction. See Utah Code Ann. § 76-9-102. Mr. Florez argues, for the first time on appeal, that because the PSR does not state to what specific conduct he pled guilty in his "mischievous conduct" conviction, there is a possibility the offense really fits better as disorderly conduct and might therefore be excluded from the

criminal history calculation.  Although the PSR did not contain specific facts about Mr. Florez's conduct underlying the conviction, we note that defendant paid $200 restitution to the victim, in addition to a $250 fine, a suspended jail term, and six months' court probation.  We doubt that restitution would be required for disorderly conduct, but it could certainly be required for damage to property under the criminal mischief statute.  We therefore conclude that Mr. Florez's prior conviction for mischievous conduct was properly included in calculating criminal history.

### III.  Departure for Over-Representation of Criminal History

Finally, Mr. Florez contends that even if the mischievous conduct conviction was properly included in his criminal history, the court misunderstood its authority to depart for over-representation of his criminal history category pursuant to USSG § 4A1.3, p.s.  As discussed above, we have jurisdiction to review a district court's discretionary decision not to depart from the guideline range if we find that the court's decision was based on its erroneous belief that the Guidelines deprived it power to depart.  Rowen, 73 F.3d at 1063.

"'[U]nless the judge's language unambiguously states that the judge does not believe he has authority to downward depart, we will not review his decision.'"  Belt, 89 F.3d at 715 (quoting United States v. Rodriguez, 30 F.3d

1318, 1319 (10th Cir. 1994)). Defendant alleges that the following question by the judge indicates he did not believe he had the authority to depart: "I don't understand your argument there. Are you asking me to ignore that as part of the history?" R. Vol. IV at 4. However, this was in response to defense counsel's vague statement that the mischievous conduct conviction "was a rather minor matter, but it does make some difference or could make some difference to him if the Court were to look upon that favorably." Id. We are unconvinced that the Court misunderstood its authority to depart on a ground that is so firmly established. See United States v. Sanders, 18 F.3d 1488, 1491 (10th Cir. 1994).

## CONCLUSION

For the foregoing reasons, we AFFIRM the sentence imposed by the district court.

ENTERED FOR THE COURT

Stephen H. Anderson
Circuit Judge

-13-